**J. B. LAPSLEY et ux., Appellants,**

v.

**The STATE of Texas, Appellee.**

**No. 7718.**

Court of Civil Appeals of Texas.

Texarkana.

July 5, 1966.

Rehearing Denied July 26, 1966.

---

---

Mike McKool, McKool & McKool, Wayne O. Woodruff, Dallas, for appellants.

Waggoner Carr, Atty. Gen., Samuel D. McDaniel, Asst. Atty. Gen., Carroll Graham, Asst. Atty. Gen., Austin, for appellee.

CHADICK, Chief Justice.

This is an eminent domain case. By stipulation the only issue to be determined in the trial court was "the market value of the property taken and damages to the remaining land, if any." Three special issues in the Carpenter [1] case pattern were submitted and on the jury's response a judgment was rendered awarding $365,927.20 to J. B. Lapsley and wife, Allie N. Lapsley, the appellants, and vesting in the State of Texas 416,159 square feet of land at Zangs Boulevard and Sanger Street in the City of Dallas, Texas. The judgment of the trial court is modified and affirmed.

Big D Outdoor, Inc., owned a billboard located on the land appropriated. This company was made a party to the initial condemnation proceedings and its damage was assessed at $350.00 and an award of that sum was made to it by Special Commissioners appointed to assess damages occasioned by appropriation. The company became a party to this lawsuit when an appeal from the Commissioners' decision and award was perfected. Before trial of the case on appeal Big D Outdoor Inc., filed a disclaimer of further interest in this proceedings and recited that in settlement the State of Texas had paid it the sum of $350.00. Prayer was for dismissal from the pending lawsuit. An order of dismissal was entered over the objection of the Lapsleys. This order and its effect is the subject of the appellants' first point of error.

The court's action in dismissing Big D Outdoor, Inc., is, the appellants say, an interposition that prevented the jury from exercising its function of determining the fair market value of the land appropriated, including all estates and interest therein, and constituted an arbitrary apportionment of the damages resulting from the State's appropriation of the land. The record as a whole, considered in detail, does not show this action harmed the appellants; although dismissal of Big D Outdoor Inc., considered out of its frame of reference, may ostensibly have had the consequences charged, a comprehensive and penetrating examination reveals such an effect to be an apparition without substance.

The record of the trial court proceedings contains no proof of the nature, value, or existence of a lease, or other interest in the land, vested in or claimed by the billboard company. The issues for trial were by stipulation reduced to " * * * the market value of the property taken and damages to the remaining land * * *." The issues submitted required the jury to determine the full market value of the land taken. The jury responded by doing so. The full value of the land, which necessarily included the value of all estates and interest therein shown by the evidence, was awarded wholly to the Lapsleys. In the trial court the case was conducted in accordance with the damage stipulation referred to and without reference to, or evidence respecting the Big D Outdoor Inc.,

and other omitted parties[2] or any interest omitted parties might then or theretofore have had or asserted in the land.

A party is permitted by Rules 163 and 164, Vernon's Ann. Texas Rules of Civil Procedure, to withdraw from a suit when no prejudice results to the adverse party. The preceding statement of the facts and circumstances of this case show that Big D Outdoor Inc.'s withdrawal did not prejudice the Lapsleys in any way. The suit was tried upon the theory that the Lapsleys owned the property and every interest and estate into which it might be subdivided. They were awarded a judgment for the total value of the land appropriated, as the jury found that value, without reduction by apportionment of a part to other claimants. The State necessarily absorbed the amounts paid to Big D Outdoor Inc., the lien holders, etc., under the judgment entered; with no part deducted from the Lapsley award. No harm to the Lapsleys having resulted the point is overruled. Rule 434. The appellants maintain that certain rules expressed in Longino v. State (Tex. Civ.App.), 385 S.W.2d 901, Wr. Ref., N.R. E.; and Fort Worth Concrete Company v. State (Tex.Sup.), 400 S.W.2d 314, are applicable and the action is reversible error. The procedure and facts dealt with in those cases, and the posture of the parties, presented questions distinctly different from the problem here. These cases are distinguishable.

The subject of Points of Error Second and Third is unauthorized communication made to certain jurors. A newspaper, The Dallas Times Herald, in its first edition on Monday, April 12, 1965, off press at noon, carried two articles the appellants claim to be harmful to them. Counsel for appellant became aware of these stories a short time after their publication and the same afternoon of their appearance filed a motion for mistrial, although it was not then known whether or not the published stories had come to the attention of the jurors. After hearing the motion the trial judge and counsel for all parties entered into a discussion. Counsel for the Lapsleys declared that any instruction at that point in the trial would emphasize the stories and the court acceded to counsel's argument that no instruction should be given, but did overrule the motion for mistrial and continued with the trial.

Subsequent to jury verdict, but prior to judgment, appellants filed a second motion for mistrial. The grounds of the second motion was that a juror, who later became foreman of the jury, read aloud some part of one of the newspaper stories in the presence of three other jurors. The juror who testified to this occurrence, and the only juror testifying on the motion, did not hear the story read in its entirety, he walked away while the reading was in progress. This juror was asked what the story said "in regard to whether the owners were asking too much or too little for their property?" He replied, "I didn't hear that part of it. I left." In an affidavit he made prior to testifying is this sentence: "This article said that the county was running out of funds in purchasing right of way on Highway 67, and the owners were asking too much money for their land." A segment of Zangs Boulevard is the designated route of U. S. Highway 67 at a point south of the appropriated property. The distance between this property and the highway is not shown.

The tenor of the article read, or partly read, in the presence of the jurors, was that

2. The Special Commissioners' Report filed prior to trial shows awards made to tax lien holders, the City and County of Dallas, and several witnesses for sums totaling $1,526.61, in addition to the award made to Big D Outdoor, Inc., and the Lapsleys. The State deposited the total of the Commissioners' award in the registry of the court and the lien holders and witnesses withdrew their apportioned share. The suit on appeal proceeded in disregard of these recipients of award in the prior proceeding, (the lien holders and the witnesses), and without objection to their absence.

Dallas County Commissioners were having to pay surprisingly high prices for undeveloped right of way along U. S. Highway 67. Length makes it impractical to reproduce the story verbatim. It said that valuations were made by state appraisers, and the state and county shared equally in the cost. Listed was four small tracts and the amount paid for them. The story reported that some officials feared that a three million dollar bond issue voted for the U. S. 67 Highway project might be exhausted by high land cost. However, the County Judge was said to feel sufficient money was on hand for completion. Two commissioners were quoted with respect to $44,500.00 paid for a specific .718 acre tract; collectively, they said it seemed too high. The County Judge mentioned that land cost was increasing rapidly, and that speculation had pushed up values along U. S. Highway 67. The remainder of the article reported the relatively modest valuations and taxes produced by several of the tracts mentioned.

 It was not shown any juror read one of the articles cited, and there is no proof the other was read in its entirety. The jurors did not individually comment upon or as a body discuss the story or its subject matter. The court charge admonished the jury to confine discussions strictly to the evidence admitted, and not to mention personal experience, discuss any other case, or communicate to other jurors personal knowledge or information about the facts of the case. Before a judgment may be reversed for jury misconduct it must be established (1) that misconduct occurred and (2) that on review of the record as a whole it appears that injury probably occurred to the complaining party. Rule 327, V.A.T.R.; Compton v. Henrie (Tex.Sup.1963) 364 S.W.2d 179. When the record is considered nothing is found to indicate that the newspaper story influenced the jury or its verdict. The points are overruled. Navar v. State (El Paso Civ.App.1961, no writ), 344 S.W.2d 188.

The appellants based their Fourth, Fifth and Sixth points of error on the action of the trial court in excluding testimony tendered to prove that L. E. Clark, District Administrative Engineer, Texas Highway Department, found and recommended as the fair market value of the Lapsley's appropriated property and damage to that remaining, a sum in excess of $408,000.00. The trial court ruled that such engineer's valuation recapitulation sheets, prepared in his office and signed by him, and a Highway Department manual on land acquisition policies and procedures governing Department employees in the determination of values were not available to counsel for the Lapsleys for inspection or introduction in evidence.

This quotation from the argument made under these points of error in the appellants' brief isolate appellants' principal complaint and reduces somewhat the scope of the points of error, to-wit:

"In fact, defendants made it clear that they were not seeking nor attempting to introduce into evidence any of the appraisal reports of the independent appraisers of petitioner as shown by the following:

"'Mr. McKool: * * * I don't want any of the appraisal reports, Your Honor, of their appraisers. I have just asked for the recapitulation sheets by their staff reviewing appraisers. That's all I'm asking for. And I am not asking—at no time during this testimony are we asking for their appraisal reports of their fee appraisers.'

"The court interpreted the attempt to introduce this testimony as not being admissible under the rules of discovery, and therefore, would not be permitted into evidence, and defendants even pointed out 'in the Biggers case, the court said —it wasn't discovery. We were ready to put it on in the trial of a case. There is a difference between discovery and wanting to put on some evidence in the trial

of a case. We are not trying to discover. We want to put on evidence to this jury.'"

The appellants contend the recapitulation sheets and the Department manual were admissible as admissions against interest, as rebuttal testimony and for impeachment purposes; and the court's refusal to make the data available to them was a denial of due process.

■ The recapitulation sheets and the manual were not in appellants' possession and therefore were not tendered by them. The witness, L. E. Clark, District Administrative Engineer, apparently had the recapitulation sheets and manual with him on the witness stand, but the trial judge sustained the State's objection and refused to order either to be tendered into evidence or delivered to the appellants for inspection. The nature of appellants' demand can not be ignored. While appellants argue to the contrary, the demand for production of this data is an exercise of the discovery process. Appellants' brief leaves the impression that they concede that appellants were not entitled to compel production in a discovery proceeding. Such concession respecting the recapitulation sheets seems inescapable as the sheets clearly appear to come within the provisions of Rule 167 [3] granting documents of such nature immunity from discovery. The statement of counsel in the quotation from the brief limits appellants' claim of harm to a denial of a right to introduce the recapitulation sheets in evidence as an admission against interest. The implication of the quoted statement is that the other data was wanted for examination and use if found useful.

■ The trial court had no power to aid the Lapsleys in a search for evidence or compel production of documentary material in support of their case except in the mode provided by statute or rule. Messner v. Giddings, 65 Tex. 301; Hastings Oil Company v. Texas Company, 149 Tex. 416, 234 S.W.2d 389. Appellants did not apply for a subpoena duces tecum or follow discovery procedures to obtain or inspect the recapitulation sheets and manual. In the absence of procedures invoking the court's discovery and related powers the trial judge had no authority to require, during the course of cross examination, that the witness under examination produce these instruments either for the Lapsleys' inspection or for introduction in evidence.

■ There is still another reason why the action of the trial court was proper with respect to the recapitulation sheets. Art. 3264, Vernon's Ann.Tex.Civ.St., requires the condemning authority to negotiate settlement of damages with owners of condemned property as a prerequisite to the exercise of the power of eminent domain. This statute contemplates good faith negotiation. Such negotiation would require an effort by the condemnor to investigate all aspects of value and prepare work sheets and recapitulation sheets when necessary or convenient in furtherance of the statutory settlement objective. The recapitulation sheets are a part of and entwined in this negotiation and settlement process and as such are not admissible as an admission against interest, nor for any purpose appellants suggest. City of Houston v. Derby (Galveston Tex.Civ.App.1948, er. ref.), 215 S.W.2d 690. The appellants have not been deprived of due process.

■ Finding no error requiring reversal, all of appellants' points are respectively overruled and appellee, the State of Texas', cross-point complaining of the trial court's award of costs to the Lapsleys will be considered. Agents for the State nego-

---

3. "* * * written communications passing between agents or representatives or the employees of either party to the suit, or communications between any party and his agents, representatives, or their employees, where made subsequent to the occurrence or transaction upon which the suit is based, and made in connection with the prosecution, investigation or defense of such claim or the circumstances out of which same has arisen."

tiated with the Lapsleys for the acquisition of the appropriated land as required by Art. 3264. The State offered to pay in excess of $408,000.00. The Lapsleys declined the offer. The State then instituted condemnation proceedings. The Special Commissioners awarded the Lapsleys $264,-200.00. The judgment of the court below awarded the Lapsleys $365,927.20. The State's initial settlement offer exceeded the award of the Commissioners and the judgment of the court. Art. 3267 provides that under such circumstances costs shall be paid by the owner of the property. The costs in the trial court and of this appeal must be taxed against the Lapsleys.

The original opinion herein is withdrawn and the foregoing substituted for it; appellants' motion for re-hearing is overruled and the judgment of the trial court, modified as to cost, is affirmed.