STATE of Texas, Appellant,

v.

Shirrell D. HIPP, et ux., et al., Appellees.

STATE of Texas, Appellant,

v.

C. Milton DOWD, et ux., Appellees.

Nos. 3–91–053–CV, 3–91–215CV.

Court of Appeals of Texas, Austin.

May 6, 1992.

---

Dan Morales, Atty. Gen., Bonnie C. Lockhart, Mark Heidenheimer, Asst. Attys. Gen., Austin, for the State.

Sue Wall, John McClish, Womack & McClish, P.C., Austin, for Shirrell D. Hipp, et ux., et al.

John McClish, Kent A. Sick, Womack & McClish, P.C., Austin, for C. Milton Dowd, et ux.

Before CARROLL, C.J., and JONES and SMITH, JJ.

JONES, Justice.

These are condemnation cases. In separate causes, the State of Texas, appellant, acting by and through the State Highway and Public Transportation Commission, brought condemnation proceedings against Shirrell D. Hipp, et al., and C. Milton Dowd, et al. (collectively, "the landowners"), appellees, to acquire property for a highway project. Both cases were tried to a jury, and in each cause the jury failed to find that the State negotiated with the landowners in good faith for the purchase of the properties before bringing the condemnation actions. Following the return of the jury's verdict, the trial court in each case dismissed the State's condemnation suit and awarded attorney's fees to the landowners. The State has perfected an appeal in each cause. We will reverse the trial court's dismissal of cause number 3–91–053–CV (the "Hipp case") and render judgment in accordance with the jury finding as to the value of the property being taken by the State; we will affirm the judgment of the trial court in cause number 3–91–215–CV (the "Dowd case").

## BACKGROUND

Both cases arise out of the State's efforts to acquire property necessary for the completion of two major highway projects. The Hipp case involved the taking of a whole property for the purpose of widening Ben White Boulevard in Austin. The Dowd case involved the taking of an 836–square–foot strip of land along the front of a 14,546–square–foot parcel for the purpose of widening and elevating U.S. Highway 183 in Austin. In each case, the Texas Department of Highways and Public Transportation (the "Highway Department") hired an independent professional appraiser to determine the value of the property to be taken. Once the independent appraisal was completed, a right-of-way appraiser employed by the Highway Department reviewed the appraisal. Based on the independent appraisal, the right-of-way appraiser then made a recommendation to the central Right-of-Way Division for the State. The Right-of-Way Division then reviewed the work of the independent appraiser and the right-of-way appraiser and made a final determination as to the amount of compensation to be offered the landowners for their property.

In each case, after the Right-of-Way Division had approved the compensation figure, a right-of-way agent employed by the Highway Department communicated the offer to the landowners. The landowners rejected the offers, whereupon the State instituted condemnation proceedings. In each proceeding the trial court appointed three Special Commissioners, who held a hearing and made an award of compensation to the landowners. In neither case did the landowners attend the Special Commissioners' hearing; and in both cases the landowners filed objections to the award of the Special Commissioners and a verified plea to the jurisdiction in the trial court.

In the trial of each case, three questions were submitted to the jury for their determination: (1) whether the State negotiated in good faith in an attempt to purchase the landowners' property before filing suit; (2) what amount of money would be necessary to compensate the landowners for the taking; and (3) what amount of reasonable and necessary attorney's fees and expenses had been incurred by the landowners. In both cases, the jury failed to find that the State had engaged in good-faith negotiations with the landowners before bringing suit. The trial court then dismissed both suits on that basis, awarding attorney's fees to the landowners. The State has appealed both cases to this Court, arguing that the evidence shows conclusively that it negotiated in good faith with the landowners before bringing suit.

## LAW APPLICABLE TO BOTH CASES

### 1. *Statutory Requirement*

■ The Texas Property Code provides as follows:

(a) If ... this state ... wants to acquire real property for public use but is *unable to agree with the owner of the property on the amount of damages,* the condemning entity may begin a condemnation proceeding by filing a petition in the proper court.

(b) The petition must:

(1) describe the property to be condemned;

(2) state the purpose for which the entity intends to use the property;

(3) state the name of the owner of the property if the owner is known; and

(4) *state that the entity and the property owner are unable to agree on the damages.*

Tex.Prop.Code Ann. § 21.012(a), (b) (1984) (emphasis added). The State has the burden of pleading and proving that before initiating the condemnation proceeding it was "unable to agree" with the landowner as to the amount of damages that would result from the taking of the landowner's property; absent such pleading and proof, the trial court lacks jurisdiction to entertain the proceeding or grant the requested relief. *See City of Houston v. Derby,* 215 S.W.2d 690, 692 (Tex.Civ.App.1948, writ ref'd); *City of Austin v. Hall,* 446 S.W.2d 330, 336 (Tex.Civ.App.1969), *rev'd on other grounds,* 450 S.W.2d 836 (Tex.1970); *Isaac v. City of Houston,* 60 S.W.2d 543, 545–46 (Tex.Civ.App.1933, writ dism'd).

### 2. *Question for Judge or Jury?*

■ Before we analyze the State's legal-sufficiency points, we address a threshold question: Should the judge or the jury decide whether the condemnor has met the unable-to-agree prerequisite to bringing a condemnation proceeding? The appellees assert that if there is a factual dispute on the issue, it is for the jury to determine. We disagree. For the reasons set out below, we conclude that the question is one for the judge, even if questions of fact exist.

As discussed above, if the condemnor fails to plead and prove that it was unable to agree with the landowner before bringing the condemnation action, the trial court must dismiss the suit for lack of jurisdiction. If we accept appellees' argument that a factual dispute as to the fulfillment of this statutory prerequisite is a question for the jury, an entire eminent-domain proceeding would be void and the case dismissed if, at the conclusion of the trial, the jury found that the condemnor had failed to satisfy the unable-to-agree requirement. In fact, that is what happened in each of the present cases; after a complete jury trial on all aspects of the condemnation proceedings (including the compensation due the landowners), the trial court dismissed the suit for lack of jurisdiction based on a failure to find that the State satisfied the unable-to-agree requirement. Such a process obviously results in an enormous waste of time and money for all parties involved, including the judicial system. The purpose of requiring the condemnor to plead and prove that it made a bona fide effort to agree is to prevent needless litigation. *City of Nueces v. Rankin,* 303 S.W.2d 455, 457 (Tex.Civ.App. 1957, no writ). A process that permitted a complete jury trial simply to determine if the trial court had jurisdiction over the cause would frustrate that purpose.

■ We conclude that the trial judge should determine as a threshold matter whether the condemnor has satisfied the unable-to-agree prerequisite to bringing suit. Such a process comports with the general rule that the determination of jurisdiction is made by the court, not the jury. *See Graham v. Graham,* 733 S.W.2d 374, 377 (Tex.App.1987, writ ref'd n.r.e.); *Ainsworth v. Oil City Brass Works,* 271 S.W.2d 754, 760 (Tex.Civ.App.1954, no writ). A matter of first consideration by any court is the determination of its own jurisdiction. *Barnes v. Bituminous Casualty Corp.,* 495 S.W.2d 5, 9 (Tex.Civ.App.1973, writ ref'd n.r.e.). Moreover, a court has the power to determine any facts on which its

jurisdiction depends. *See generally* 21 C.J.S. *Courts* § 88 (1990); *see also Texas & Pac. Ry. v. Gulf, Colo., & S.F. Ry.*, 270 U.S. 266, 274, 46 S.Ct. 263, 265, 70 L.Ed. 578 (1926); *Mike Hooks, Inc. v. Pena*, 313 F.2d 696, 700 (5th Cir.1963). Indeed, Texas courts must often resolve factual issues in making jurisdictional determinations. For example, when an issue of jurisdiction over the person exists, the parties present evidence to the trial court, and the trial court makes both factual and legal determinations as to the existence of *in personam* jurisdiction. *See* Tex.R.Civ.P. 120a; *see also Fidelity Union Life Ins. Co. v. Orr*, 648 S.W.2d 36 (Tex.App.1983, no writ). Thus, our conclusion that the judge, not the jury, should decide whether the condemnor has satisfied the statutory requirement comports with traditional Texas practice as to the determination of jurisdictional matters.

The landowners rely on *Rankin*, 303 S.W.2d 455, for the proposition that the jury may decide whether the condemnor has met the unable-to-agree requirement. Such reliance is misplaced. The issues presented in *Rankin* concerned the sufficiency of the evidence to support the jury's verdict. *Rankin* does not address the question of whether the judge or the jury should decide the unable-to-agree issue. To the extent *Rankin* can be read to stand for the proposition that the issue may be submitted to the jury whenever a fact question exists, we decline to follow it.

Finally, we note that in other jurisdictions the trial judge determines the unable-to-agree issue as a threshold matter before commencing the trial on the merits of the condemnation suit to determine just compensation due. *See, e.g., Moody's Inc. v. State*, 201 Neb. 271, 267 N.W.2d 192, 193 (1978); *State v. Bair*, 83 Idaho 475, 365 P.2d 216, 217–19 (1961); *County Bd. of School Trustees v. Boram*, 26 Ill.2d 167, 186 N.E.2d 275, 277 (1962); *State Highway & Transp. Comm'n v. Herndon*, 225 Va. 380, 302 S.E.2d 55, 57–58 (1983); *Weir v.*

*Kebe*, 29 Ohio App.3d 53, 503 N.E.2d 177, 180–81 (1985).

In sum, we hold that once the condemnee raises the question of whether the condemnor has satisfied the unable-to-agree requirement,[1] the parties should present evidence to the trial judge on the issue; and, even if issues of fact exist, the trial judge should resolve such issues. *Cf. Anderson v. Clajon Gas Co.*, 677 S.W.2d 702, 706 (Tex.App.1984, no writ) (fact issues controlling determination of court's jurisdiction may be decided by trial court in context of a plea in abatement). If the trial court determines that the condemnor has failed to carry its burden of proof on the issue, it should dismiss the condemnation proceedings; otherwise, the suit should proceed to trial on the merits. The trial court's determination on the jurisdiction issue is, of course, subject to appellate review at the conclusion of the trial on the merits.

In the present cases the trial court submitted the unable-to-agree issue to the jury, and the jury failed to find the issue in the State's favor. There is nothing in the record, however, to indicate that the trial court felt bound by the jury's verdict on this issue. Accordingly, because the trial court dismissed both suits for lack of jurisdiction, we presume that the court came to the same conclusion as the jury and made an implied "non-finding" to that effect. In any event, the appellate standard for reviewing such non-findings is the same whether they were made by the trial court or the jury.

### 3. *Satisfaction of the Unable-to-Agree Requirement*

The condemnor has the initial burden of proof on the unable-to-agree issue. In order to prevail on its legal-sufficiency point of error, therefore, the State must show, first, that the record contains no evidence affirmatively supporting a negative finding on the issue, and, second, that the contrary proposition is established as a

---

**1.** The condemnee must raise the issue by filing a verified plea to the jurisdiction. *See Austin*

*Home Center Assoc. v. State*, 794 S.W.2d 593, 594 (Tex.App.1990, no writ).

matter of law. *See Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex.1989).

Therefore, we begin our analysis by searching the record for evidence that affirmatively supports the non-finding, i.e., for evidence tending to show that the State failed to meet the unable-to-agree requirement. In both the Dowd and Hipp cases, there is no dispute that the State made only one offer of compensation to the landowners before bringing suit, and that the landowners rejected the offer in each case. The landowners assert generally that the State's practice of making only one offer of compensation is insufficient to satisfy the unable-to-agree requirement. They argue that in order to satisfy the requirement, the State must engage in "negotiations" with the landowner, i.e., the State must "bargain" with the landowner, presumably by engaging in a series of offers and counteroffers. We disagree.

■ Texas courts have made it clear that, to satisfy the unable-to-agree requirement, the condemnor must do more than merely state that the parties are unable to agree; rather, the evidence must show that before bringing the condemnation proceeding the condemnor made a *bona fide attempt to agree* with the landowner on the amount of compensation due as a result of the taking. *See Brinton v. Houston Lighting & Power Co.,* 175 S.W.2d 707, 710 (Tex.Civ.App.1943, writ ref'd w.o.m.).

What constitutes a "bona fide attempt to agree"? We agree with the following language used by one Texas court:

> With reference to an effort to reach an agreement, 2 Lewis, Eminent Domain (3d Ed.) 896, says: "The attempt need not be prosecuted further than to develop the fact that an agreement is impossible. The inability to agree required by the statute does not mean an inability to buy at any price, but only at a price which the condemning party is willing to pay."
>
> In 20 C.J. 895, § 318, it is said: "However, all that is required is that there shall be a bona fide attempt to agree with the owner, and that there shall be an honest disagreement between the parties as to the compensation which the one

is willing to give and the other is willing to receive. A formal offer and refusal is not necessary. Nor is it necessary that there should be a series of offers or prolonged negotiations in order to agree on compensation; an effort to agree is all that is required; and it is sufficient if the negotiations proceed far enough to indicate that an agreement is impossible. If it is apparent that an effort to agree would be unavailing and an offer useless, none need be made. The statute does not contemplate an impossibility to purchase at any price, however large, but merely an unwillingness on the part of the owner to sell at all, or a willingness on his part to sell only at a price which in petitioner's judgment is excessive...."

*W.T. Waggoner Estate v. Townsend,* 24 S.W.2d 83, 85 (Tex.Civ.App.1929, no writ); *see also Houston North Shore Ry. Co. v. Tyrrell,* 128 Tex. 248, 98 S.W.2d 786, 795–96 (1936) (futile effort not required); *Curfman v. State,* 240 S.W.2d 482, 484 (Tex.Civ.App.1951, writ ref'd n.r.e.) (bona fide effort sufficient); *Cook v. Ochiltree County,* 64 S.W.2d 1018, 1020 (Tex.Civ.App.1933, no writ) (bona fide attempt required).

This seems to be the general rule in other jurisdictions as well:

> The courts have demonstrated reluctance to require extensive negotiations with landowners, and have frequently cited the maxim that negotiations need only proceed to a point where it is clear that the landowner is unwilling to sell at a price which the condemnor is willing to pay. Thus, the courts have generally held that the requirement of a good-faith effort to purchase property is satisfied, and condemnation proceedings may be instituted, once the landowner has refused an offer by the condemnor ..., failed to respond to an offer by the condemnor ..., or demanded a higher price than that offered by the condemnor....

Annotation, *Sufficiency of Condemnor's Negotiations Required as Preliminary to Taking in Eminent Domain,* 21 A.L.R.4th 765, 774 (1983).

■ We conclude that the Texas statute does not demand prolonged negotiations or

a series of offers and counteroffers between the parties. Instead, the statutory prerequisite may be satisfied if the condemnor makes a single bona fide offer to a landowner that the condemnor in good faith feels is the amount of compensation due, and the landowner rejects that offer. *See Pete–Rae Dev. Co. v. State*, 353 S.W.2d 324, 325 (Tex.Civ.App.1962, writ ref'd n.r.e.); *Schlottman v. Wharton County*, 259 S.W.2d 325, 330–31 (Tex.Civ.App.1953, writ dism'd); *Curfman*, 240 S.W.2d at 484.[2] Therefore, we hold that the fact that the State made but a single offer of compensation to the landowners before bringing suit does not, in and of itself, provide any evidence to support a negative finding on the unable-to-agree requirement.

■ The landowners also point to evidence that the State's agent who actually made the offer of compensation to them was without authority to vary the amount of the offer. In light of our holding that prolonged discussions and a series of offers and counteroffers are not required to satisfy the statute, we conclude that evidence of a lack of authority to *vary* the initial offer is irrelevant to the condemnor's good faith. The landowners in the present case do not dispute that the State's agent had authority to *make* the initial offer, and that is all that is required as long as such offer itself is made in good faith.

■ There is also undisputed evidence that before bringing the condemnation proceeding, the State refused to allow the landowners to see the appraisal on which the State based its offer of compensation. The landowners cite no authority for the proposition that the State is required to divulge the basis of its offer. The pertinent question is whether the condemnor's offer was one made in good faith, not whether the condemnor divulged the basis of its offer so that the landowner might be

able to bargain more effectively with the condemnor. As stated above, the condemnor has no duty to compromise its offer as long as it is a bona fide one. Thus, we conclude that the State's failure to divulge the basis of its offer does not constitute evidence supporting the non-finding as to the State's satisfaction of the unable-to-agree requirement.

To this point in our discussion, the arguments made in both the Dowd case and the Hipp case have been identical. Because the particular facts of the two cases produce different results on appeal, we will now discuss the cases separately.

## THE DOWD CASE

In points of error one through four of the Dowd case, the State asserts that the evidence shows conclusively that it made a bona fide attempt to agree with the Dowd appellees on the purchase of the relevant portion of their tract before initiating condemnation proceedings. In points of error five through eight, the State raises several complaints regarding the admission of certain evidence, the trial court's refusal to submit certain jury instructions, and the sufficiency of the evidence to support the jury's finding as to damages.

■ As discussed above, while a single offer by the condemnor may satisfy the unable-to-agree requirement, the offer made must be a *bona fide* offer. In order to be bona fide, the offer must be made "[i]n or with good faith; honestly, openly, and sincerely; without deceit or fraud." Black's Law Dictionary 160 (5th ed. 1979); *see also State Bd. of Ins. v. Professional & Business Men's Ins. Co.*, 359 S.W.2d 312, 322–23 (Tex.Civ.App.1962, writ ref'd n.r.e.). In the context of eminent domain proceedings, the offer must not be arbitrary and capricious; rather, it must be based on a reasonably thorough investigation and hon-

---

**2.** We recognize that some courts have talked in terms of "negotiations." *See, e.g., City of Houston v. Plantation Land Co.*, 440 S.W.2d 691, 693–94 (Tex.Civ.App.1969, writ ref'd n.r.e.); *Lapsley v. State*, 405 S.W.2d 406, 411 (Tex.Civ.App.1966, writ ref'd n.r.e.). The term "negotiation" may be misleading, however. While the term "negotiation," in its broadest sense, encompasses the

making of a single offer by the condemnor and the rejection of that offer by the condemnee, the term also conjures up images of prolonged discussions and counteroffers that we do not believe are necessary to satisfy the unable-to-agree requirement. For that reason, we have opted for the phrase "bona fide attempt to agree."

est assessment of the amount of just compensation due the landowner as a result of the taking. *See Lapsley v. State*, 405 S.W.2d 406, 411 (Tex.Civ.App.1966, writ ref'd n.r.e.).

■■■ In the Dowd case, the State sought to acquire an 836–square–foot strip of land along the front of a 14,546–square–foot commercial tract owned by the Dowd appellees. Since it was a partial-taking case, one of the issues to be determined was what amount of compensation was due the landowners as damages to the "remainder" of their property, i.e., that portion not being taken by the State. The appraisal relied on by the State, however, included "0" damages to the remainder, notwithstanding the appraiser's admissions that the value of the remainder would be reduced by such factors as decreased accessibility, visibility, and traffic count. At trial, when asked why he did not include this diminution in value to the remainder in his appraisal, the appraiser testified that the Highway Department and the Attorney General's Office had instructed him not to consider a diminution in value to the remainder resulting from any factors that also negatively affected other landowners abutting the project, because such damages were considered noncompensable "community damages."

We recognize that the law in Texas on the issue of damages to the remainder in a partial-taking case is far from clear. Indeed, if this case involved merely a difference of opinion as to the proper interpretation of the law of community damages, we would be hard pressed to find any evidence of bad faith. But that is not the case here. The Highway Department's instruction that the appraiser exclude from his appraisal any diminution in value that resulted from "shared" or "community" factors was in direct contravention of the Department's own guidelines and policies. The Highway Department's "Appraisal and Review Manual" provides as follows:

> [T]he law is clear that the fact that every single tract of land along a highway may be damaged or enhanced but [sic] not prevent such damage or enhancement from being specific with regard to each and every one of such tracts.

This theory is perhaps best stated in the following from a court opinion: "The fact that adjoining or neighboring property is damaged in the same way would not prevent a recovery. Neither would the fact that adjoining or neighboring property receive similar benefits render it improper to consider such benefits.

> Particular property of appellees sustains special damages by cutting down of the street, lowering the grade upon which it abutted would be [sic] entitled to recover, notwithstanding every other lot on the street was affected in the same manner."

There was direct evidence that the manual represents the policy of the Highway Department.

We conclude that the evidence that the Highway Department instructed its "independent" appraiser to disregard the Department's own written policies and guidelines in arriving at his appraisal value supports an inference that the Department failed to make a bona fide offer that it in good faith believed to be the amount of compensation due. Such an inference constitutes more than a scintilla of evidence to support the failure to find that the State made a bona fide attempt to agree with Dowd on the purchase of his tract before it initiated condemnation proceedings. Accordingly, we overrule the State's points of error one through four in the Dowd case. In light of this holding that the trial court lacked jurisdiction, we need not address points of error five through eight, which complain of alleged errors that occurred during trial.

## THE HIPP CASE

In four points of error, the State asserts in the Hipp case that the evidence shows conclusively that it made a bona fide attempt to agree with the Hipp appellees on a purchase of their tract before initiating condemnation proceedings. In response, the landowners' primary jurisdictional argument is that the appraiser should have

valued their property as commercial property instead of residential property (which would have resulted in a significant increase in the value of the property), and that this failure constitutes sufficient evidence to support the non-finding as to the State's bona fide attempt to agree.

The State sought to acquire an entire parcel of property owned by the Hipp appellees for the purpose of widening Ben White Boulevard. As in the Dowd case, the Highway Department hired an independent appraiser to determine the amount of compensation due the landowners as a result of the taking. After the appraisal was reviewed and approved by the Department's right-of-way appraiser and the state Right-of-Way Division, the Highway Department made an offer to the landowners based on that appraisal. The landowners rejected the offer.

According to the State's own witnesses, when determining the amount of compensation due the landowner, the State must value the property to be taken at its "highest and best use," i.e., the most profitable use to the landowner that would be legally and physically possible within the foreseeable future. In making his appraisal of the Hipp appellees' tract, the Highway Department's independent appraiser determined that although the property could reasonably be used *physically* as commercial property, it was not reasonably probable that in the foreseeable future the property could *legally* be used as commercial property. He therefore valued the property based on its current residential zoning.

■ In support of their argument that the offer based on residential zoning was not a bona fide offer, the landowners point to evidence that most, if not all, of the other properties in the area bordering Ben White Boulevard are zoned commercial. While this evidence supports an inference that this property is suited physically for commercial property, such evidence, by itself, has no relevance to the legal uses to which the property could be put in the foreseeable future. Even more to the point, such evidence did not raise an inference that the State did not honestly believe

that the property would not likely be zoned commercial in the foreseeable future. There are many factors to be considered in zoning property other than the zoning of the surrounding property. The demarcation between commercial zoning and residential zoning always has to fall somewhere. We conclude that this evidence, by itself, offers no support for the negative finding on the unable-to-agree requirement.

■ Appellees also point to certain memos between the Highway Department and the City of Austin and intra-departmental memos of the City of Austin as evidence of a conspiracy to depress the value of the land along Ben White Boulevard that the State would have to acquire for the highway project. The appellees first point to a series of memos dated February 20, 1986, from the Highway Department's district right-of-way director to the City of Austin's Public Works Department. In those memos, the right-of-way director requests that the City of Austin not issue development permits that would allow encroachment of improvements into the future right of way along Ben White Boulevard. The landowners argue that this is evidence of bad faith on the part of the State. We disagree. The State's request related to the issuance of building permits, not zoning. It is hardly bad faith for the State to request that property owners not be allowed to construct buildings or other improvements when it is known that in the near future those improvements will have to be destroyed at taxpayers' expense. It would be a waste of money and time for both the State and the landowners. Accordingly, such a request reflects prudence, not an attempt to artificially suppress land values.

The landowners also point to certain inter-departmental memos of the City of Austin dated April 1985 and April 1986. In these memos, one department in the City of Austin requested another City department to deny any "intensification of zoning" (which would include changing the zoning from residential to commercial) on properties along Ben White Boulevard that the State would have to acquire for the pur-

pose of the highway improvement project. Again we conclude that this evidence does not tend to show a lack of good faith on the part of the State. Even if we assume that it would be bad faith to deny rezoning on properties designated to be acquired for a highway project, there is no evidence that the Highway Department itself ever requested such action. The memos in question were not from the Highway Department; rather, they were between departments of the City of Austin. There is absolutely no evidence linking the State to a "conspiracy" to suppress land values by manipulating City of Austin zoning procedures. Accordingly, the memos do not tend to show a lack of good faith by the State in valuing the tract. We conclude that the record contains no evidence affirmatively supporting the negative finding on the unable-to-agree requirement.

■ Having reached the foregoing conclusion, we must now determine whether the State has shown as a matter of law that it satisfied the unable-to-agree requirement. After examining the entire record, we conclude that it did. There is no dispute that the State made an offer of compensation to the landowners, who rejected that offer. The critical question, therefore, is whether the State's offer was a bona fide one; and in that context, the only real dispute is whether the property should have been valued as residential or commercial property.

The record shows that the independent appraiser used by the Highway Department in this case based his decision to characterize the property as residential on the following facts: (1) the property was currently zoned residential; (2) the zoning history of the property showed that two earlier applications to rezone the property as commercial had been unanimously denied by the City of Austin before the current highway project was announced; (3) other residential-property owners in the neighborhood vigorously opposed having the property rezoned; and (4) although the rear of appellees' property abutted Ben White Boulevard, the front of the property was on a residential street. The apprais-

er's uncontradicted testimony was clear, direct, and positive, and was internally devoid of inconsistencies and contradictions; in short, we believe it is sufficient, in combination with the other evidence in the case, to prove the issue conclusively. *See Collora v. Navarro*, 574 S.W.2d 65, 69 (Tex.1978). We conclude, therefore, that the record demonstrates as a matter of law that the State made a bona fide offer of compensation to the Hipp appellees, which they rejected; thus, the State has conclusively shown that it satisfied the unable-to-agree requirement. Accordingly, we sustain the State's points of error one through four in the Hipp case.

## CONCLUSION

Based on the foregoing discussion, we conclude that in the Dowd case there is sufficient evidence to support the failure to find that the State made a bona fide attempt to agree with the Dowd appellees before bringing suit. Therefore, in cause number 3–91–215–CV we affirm the judgment of the trial court dismissing that suit and granting reasonable attorney's fees to the Dowd appellees. We conclude, however, that in the Hipp case the State has conclusively shown that it made a bona fide attempt to agree with the Hipp appellees before bringing suit. Therefore, in cause number 3–91–053–CV we reverse the judgment of the trial court dismissing the suit and awarding reasonable attorney's fees; we render judgment that the Hipp appellees be awarded $288,500 in accordance with the jury's finding on the fair market value of their property taken by the State, and that title to the Hipp tract, as described in the Award of Commissioners dated May 2, 1990, and filed in the court below, be vested in the State of Texas.