Thelma Blahuta HUBENAK and
Emil Blahuta, Appellants,

v.

SAN JACINTO GAS TRANSMISSION
COMPANY, Appellee.

Kutach Family Trust, Darryl Wayne
Kutach, Trustee, Appellant,

v.

San Jacinto Gas Transmission
Company, Appellee.

Rosie Wenzel, Wilma McAndrew,
Betty McCleney, and Tilford
Sulak, Appellants,

v.

San Jacinto Gas Transmission
Company, Appellee.

Thelma Blahuta Hubenak, Appellant,

v.

San Jacinto Gas Transmission
Company, Appellee.

Nos. 01–99–00691–CV, 01–99–00959–CV,
01–99–01359–CV, 01–99–01360–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 13, 2001.

Rehearing Overruled Jan. 23, 2002.

William D. Noel, Houston, for Appellant.

Thomas E. Sheffield, Sheffield & Warren, Houston, for Appellee.

Panel consists of Justices HEDGES, JENNINGS and PRICE.*

## OPINIONS ON MOTIONS
## FOR REHEARING

TERRY JENNINGS, Justice.

We grant appellee's motions for rehearing, withdraw our opinions and judgments dated July 27, 2000, and substitute these opinions in their stead.

These are four eminent domain cases, in which appellee, San Jacinto Gas Transmission Company (San Jacinto) brought condemnation proceedings against the appellants, various landowners (the Landowners), to condemn easements for the construction, operation, and maintenance of a 12 inch natural gas pipeline over the property of the Landowners.[1] The trial courts rendered partial summary judgments for San Jacinto, finding San Jacinto had conducted the statutorily required good faith negotiations, and the trial courts had jurisdiction. The cases were tried separately to juries on the issue of just compensation. The final judgments vested the easement rights in San Jacinto and awarded the Landowners compensation. The sole issue presented by the Landowners on appeal is limited to the jurisdictional question of whether San Jacinto engaged in good faith negotiations and made bona offers to them as is statutorily required under section 21.012 of the Texas Property Code. We affirm.

### Background and Procedural Facts

San Jacinto is a gas utility with the power of eminent domain under sections 181.001, 181.004, and 181.008 of the Texas Utility Code. In 1996, San Jacinto undertook to build a 12 inch natural gas pipeline approximately ten miles long through Fort Bend County, Texas. The Landowners owned interests in the property across which San Jacinto sought permanent and temporary easements for its pipeline.

The record shows that San Jacinto's right-of-way agent made contact several times with each of the Landowners over a period of several weeks. Each of the Landowners made it clear to San Jacinto's agent they simply did not want the pipeline on their property. Some stated they would not sell a right of way at the time they were approached and demanded the pipeline be rerouted off their property. Others stated they did not want to hear any proposal and were opposed to the pipeline.

---

* The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

1. San Jacinto brought these proceedings to build a pipeline over four tracts of land. The cases have different facts, trial courts, and damages. However, the issue and the procedural histories are the same in each case. In all four cases, the trial courts rendered identical partial summary judgments for San Jacinto. The landowners have separately appealed the identical jurisdictional issue of whether San Jacinto engaged in the statutorily required good faith negotiations. Today, in four separate opinions, we affirm the judgments of the trial courts in the following

appeals: (1) *Thelma Blahuta Hubenak and Emil Blahuta v. San Jacinto Gas Transmission Co.*, No. 01–99–00691–CV; (2) *Kutach Family Trust, Darryl Wayne Kutach, Trustee v. San Jacinto Gas Transmission Co.*, No. 01–99–00959–CV; (3) *Rosie Wenzel, Wilma McAndrew, Betty McCleney, and Tilford Sulak v. San Jacinto Gas Transmission Co.*, No. 01–99–01359–CV; and (4) *Thelma Blahuta Hubenak v. San Jacinto Gas Transmission Co.*, No. 01–99–01360–CV. We also note that the Texas Supreme Court recently denied review in *Hubenak v. San Jacinto Gas Transmission Co.*, 37 S.W.3d 133 (Tex.App.—Eastland 2001, pet. denied).

San Jacinto hired a state-certified general real estate appraiser to calculate the value of the easements. Based on the appraisals, San Jacinto offered the Landowners an amount far greater than the appraised value for the easements on their respective properties. David M. Dunwoody, San Jacinto's right-of-way manager, testified by affidavit that it is San Jacinto's policy, in order to avoid litigation, to pay more than fair market value for property it condemns. He stated that, as with all landowners along the route, the terms of any proposed easement were negotiable. He further stated that the Landowners, however, were not satisfied with the amount of money offered, and San Jacinto refused their demands because they vastly exceeded fair market value or required unacceptable terms.

The Landowners do not dispute the amount of the offers. Instead, the Landowners contend San Jacinto did not negotiate in good faith because its offers included three additional property rights they claim San Jacinto had no right to condemn: (1) the right to transport substances in addition to natural gas; (2) the obligation to warrant and defend title to the easement; and (3) the right to assign the easement to any person or entity.

San Jacinto filed petitions in condemnation, contending it was "unable to agree" with the Landowners on the amount of damages. The petitions in condemnation did not include the three rights, set out above, which had been included in the original offers. The county court appointed special commissioners to assess damages. TEX. PROP.CODE ANN. § 21.014 (Vernon 1984). The Landowners objected to the special commissioners' awards and demanded jury trials. TEX. PROP.CODE ANN. § 21.018 (Vernon 1984).

About ten months later, San Jacinto filed motions for partial summary judg-

ment, arguing that: (1) the county courts had jurisdiction; (2) San Jacinto satisfied all statutory prerequisites under section 21.012 of the Texas Property Code to bring the condemnation actions; and (3) the only fact issues remaining for trial were the amounts of damages. In response, the Landowners filed pleas to the jurisdiction and cross-motions for partial summary judgment. The Landowners argued that the trial courts did not have jurisdiction because San Jacinto did not conduct the statutorily required good faith negotiations. San Jacinto responded that it had acted in good faith because its bona fide offers were based on a reasonably thorough investigation and an honest assessment of the amounts of just compensation.

The trial courts granted San Jacinto's motions for partial summary judgment and denied the Landowners' cross-motions, finding San Jacinto "met all other statutory requirements to begin its eminent domain proceeding and to invoke the jurisdiction of the Court, including the requirement that it engage in good faith negotiations." These cases were tried separately to juries on the issue of just compensation. The final judgments vested the easement rights in San Jacinto and awarded the Landowners compensation, based on the respective jury verdicts. The Landowners do not complain about the jury verdicts, but limit their appeals to the jurisdictional issue of the statutorily required good faith negotiations.

### Eminent Domain Proceedings

■ The Texas land condemnation scheme is a two-part procedure consisting of an initial administrative proceeding and then, if necessary, a judicial proceeding. *Amason v. Natural Gas Pipeline Co.,* 682 S.W.2d 240, 241–42 (Tex.1984). When set-

tlement terms cannot be reached between a condemnor and a landowner, the condemnor must file a petition in condemnation in the proper court of the county in which the land is located. TEX. PROP.CODE ANN. §§ 21.001, .012, .013 (Vernon 1984 & Supp.2001). Filing the petition is the first step in the proceeding, and it is by virtue of this step that jurisdiction over the subject matter is acquired. *State v. Nelson,* 160 Tex. 515, 334 S.W.2d 788, 790 (1960). After the petition is filed, the trial court appoints three special commissioners who conduct hearings, assess damages, and file an award reflecting their opinion of the value of the land. TEX. PROP.CODE ANN. §§ 21.014, .015, .016 (Vernon 1984). The proceedings are administrative in nature from the time the petition in condemnation is filed until the special commissioners' award is made. *Amason,* 682 S.W.2d at 242. If satisfied with the commissioners' award, the condemnor may either pay the amount to the landowner or deposit the amount into the registry of the court. TEX. PROP.CODE ANN. § 21.021(a)(1) (Vernon 1984).

 If either party is dissatisfied with the award, timely objections may be filed with the appropriate court. TEX. PROP. CODE ANN. § 21.018(a). Filing timely objections vacates the special commissioners' award and converts the administrative proceedings into a normal pending cause, with the condemnor as plaintiff and landowner as defendant. *Amason,* 682 S.W.2d at 242. The trial court's jurisdiction as a court is invoked when the objections are filed. *John v. State,* 826 S.W.2d 138, 141 n. 5 (Tex.1992).

### Statutorily Required Good Faith Negotiations

The Landowners contend the trial courts erred in granting San Jacinto's mo-

tions for partial summary judgment. Specifically, the Landowners argue that the trial courts lacked jurisdiction because San Jacinto did not engage in the statutorily required good faith negotiations. Section 21.012 of the Property Code provides:

> (a) If ... a corporation with eminent domain authority ... wants to acquire real property for public use but is *unable to agree* with the owner of the property on the amount of damages, the condemning entity may begin a condemnation proceeding by filing a petition in the proper court.
>
> (b) The petition must:
>
> . . . .
>
> (4) state that the entity and the property owner are *unable to agree* on the damages.

TEX. PROP.CODE ANN. § 21.012 (Vernon 1984) (emphasis added).

 The condemnor has the burden of pleading and proving that before it initiated the condemnation proceeding, it was "unable to agree" with the landowner as to the amount of damages that would result from the taking of the landowner's property. *State v. Hipp,* 832 S.W.2d 71, 75 (Tex. App.—Austin 1992), *rev'd on other grounds,* 867 S.W.2d 781 (Tex.1993). Without such pleading and proof, the trial court has no jurisdiction to entertain the proceeding or grant the requested relief. *Id.* To show the jurisdiction of the court to try a condemnation case, the condemnor must prove strict compliance with section 21.012. *See Anderson v. Clajon Gas Co.,* 677 S.W.2d 702, 704 (Tex.App.—Houston [1st Dist.] 1984, no writ) (holding that to show jurisdiction, condemnor must prove strict compliance with former statute governing notice and return of service).[2]

---

**2.** Parts of former TEX.REV.CIV. STAT. art. 3264 appear as subchapter B of chapter 12 of the

■ The "unable-to-agree" condition refers to a bona fide attempt to agree on damages and includes a bona fide offer by the condemnor to pay the estimated true value of land. *State v. Schmidt*, 894 S.W.2d 543, 544–45 (Tex.App.—Austin 1995, no writ). The condemnor's duty to engage in good faith negotiations to acquire the property is a jurisdictional requirement to filing suit under section 21.012. *See id.* at 545 n. 1.

■ It must be emphasized that the sole purpose of Property Code section 21.012, as was the purpose of Revised Statutes article 3264 before it, is "to forestall litigation and to prevent needless appeals to the courts when the matter may have been settled by negotiations between the parties." *County of Nueces v. Rankin*, 303 S.W.2d 455, 457 (Tex.Civ.App.—Eastland 1957, no writ). In essence, its purpose is to avoid the necessity of a condemnation proceeding. *Schlottman v. Wharton County*, 259 S.W.2d 325, 330 (Tex.Civ.App.—Fort Worth 1953, writ dism'd). Understandably reluctant landowners may not delay a condemnation proceeding indefinitely by stalling the negotiation process. Once it becomes apparent to the condemning entity that negotiations would be futile, it may begin a condemnation proceeding by filing a petition in the proper court.

### Standard of Review

The issue in these cases was determined on cross-motions for summary judgment. In reviewing a summary judgment, we indulge every reasonable inference in favor of the nonmovant, resolve any doubts in its favor, and take as true all evidence favorable to it. *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex.1995).

However, San Jacinto argues the proper standard of review is a legal sufficiency standard. In reviewing the legal sufficiency of the evidence, or a "no evidence" point, we consider only the evidence and inferences that tend to support the finding, and disregard all evidence and inferences to the contrary. *Browning–Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 928 (Tex.1993). If there is more than a "scintilla" of evidence to support the finding, it must be upheld and the judgment affirmed. *Id.*

In support of the legal sufficiency standard, San Jacinto relies on *Hipp*, which held as follows:

> [O]nce the condemnee raises the question of whether the condemnor has satisfied the unable-to-agree requirement, the parties should present evidence to the trial judge on the issue; and, even if issues of fact exist, the trial judge should resolve such issues. If the trial court determines that the condemnor has failed to carry its burden of proof on the issue, it should dismiss the condemnation proceedings; otherwise, the suit should proceed to trial on the merits.

832 S.W.2d at 76 (citations omitted). The procedural posture in *Hipp* is distinguishable from this case, however, because in that case all the condemnation issues were submitted to a jury. *Id.* at 75. After the jury found the State did not negotiate in good faith, the trial court dismissed the petition in condemnation for lack of jurisdiction. *Id. Hipp* held that, to avoid this type of needless litigation, a trial court should determine the threshold issue of whether the condemnor satisfied the unable-to-agree prerequisite to bringing suit. *Id.* Moreover, in doing so, a trial court has

Property Code, TEX. PROP.CODE ANN. §§ 21.011 .016, pursuant to the nonsubstantive codifying Act of May 26, 1983, 68th Leg., R.S., ch. 576, sec. 1, §§ 21.011 .016, 1983 Tex. Gen. Laws 3475, 3498–3501.

the power to determine any facts on which its jurisdiction depends. *Id.* at 75–76.

Because *Hipp* was dismissed by the trial court for lack of jurisdiction, the appellate court presumed the trial court made an "implied non-finding" that the State did not negotiate in good faith. *Id.* at 76. The appellate court then applied a legal-sufficiency standard of review. *Id.*

The courts have resolved the jurisdictional negotiate-in-good-faith issue with various procedural mechanisms. For example, the trial court in one case bifurcated a trial to determine the negotiate-in-good-faith issue first and damages later. *Precast Structures, Inc. v. City of Houston,* 942 S.W.2d 632, 633 (Tex.App.—Houston [14th Dist.] 1996, no writ). This Court upheld a trial court's denial of a plea in abatement. *Anderson,* 677 S.W.2d at 706. In yet another case, the court held a landowner must raise the issue by filing a verified plea to the jurisdiction. *Austin Home Ctr. Assocs. v. State,* 794 S.W.2d 593, 594 (Tex.App.—Austin 1990, no writ). Still another court submitted the issue to a jury, but then disregarded its finding. *Willoughby v. Upshur Rural Elec. Coop. Corp.,* 562 S.W.2d 33, 35 (Tex.Civ.App.—Tyler 1978, writ ref'd n.r.e.).

 Despite the vast differences in procedural mechanisms used to resolve the negotiate-in-good-faith jurisdictional issue, we agree with the court's reasoning in *Hipp,* that the trial court should determine as a threshold matter the jurisdictional facts regarding whether the condemnor satisfied the unable-to-agree prerequisite to bringing suit. *Hipp,* 832 S.W.2d at 75–76. In *Hipp,* the appellate court presumed the trial court made an implied finding that the condemnor did *not* negotiate in good faith. *Id.* In the current appeals, however, we presume the reverse is true: we presume the trial courts made implied findings that San Jacinto negotiat-

ed in good faith. Under a legal-sufficiency standard of review, we consider only the evidence and inferences that tend to support the finding and disregard all evidence and inferences to the contrary. *See Browning–Ferris,* 865 S.W.2d at 928.

### Analysis

The Landowners contend San Jacinto did not negotiate in good faith because San Jacinto's offers encompassed three additional property rights they claim cannot be condemned. San Jacinto responds that it should prevail either because it negotiated in good faith or because negotiations would have been futile. We agree with San Jacinto on both points.

 It takes very little to satisfy the negotiate-in-good-faith requirement. A single offer by a condemnor will satisfy the unable-to-agree requirement, if it is a bona fide offer. *Hipp,* 832 S.W.2d at 78. In the eminent-domain context, a bona fide offer "must be based on a reasonably thorough investigation and honest assessment of the amount of just compensation due the landowner as a result of the taking." *Id.* at 78–79. Not only were San Jacinto's offers to the Landowners bona fide in accordance with section 21.012 of the Texas Property Code, its attempts to agree with the Landowners were futile.

### Futility of Attempt to Agree

 As a general rule, a condemnor is not required to continue to attempt negotiations, when any further attempts to agree with the landowner appear to be futile. *Anderson,* 677 S.W.2d at 706. When an attempt to agree on the value of the property in question would be futile, no attempt need be made. *Houston N. Shore Ry. v. Tyrrell,* 128 Tex. 248, 98 S.W.2d 786, 795 (1936) (holding attempt to agree futile when some claimants are un-

known and conflicting claims affect entire property); *Anderson*, 677 S.W.2d at 706 (holding attempt to agree futile when the condemnor's representative was not authorized to make per/month price arrangement, as requested by landowner); *Mid–America Pipeline Co. v. Hadwiger*, 471 S.W.2d 157, 159 (Tex.Civ.App.—Amarillo 1971, no writ) (holding attempt to agree futile when lessee holding undisclosed and unrecorded lease on land was present at unsuccessful conference between condemnor and landowner); *Aronoff v. City of Dallas*, 316 S.W.2d 302, 309 (Tex.Civ. App.—Texarkana 1958, writ ref'd n.r.e.) (holding attempt to agree with lessees futile when condemnor, after good faith effort, was unable to agree with dominant landowners).

The undisputed evidence, far more than a scintilla, shows San Jacinto's attempts to agree with the Landowners on the value of the condemned properties were in fact, futile. In regard to appellants Hubenak and Blahuta, the record shows San Jacinto's right-of-way agent made contact with them several times over a six-week period and was told they simply did not want another pipeline on their property, would not sell the right of way at the time, and demanded the pipeline be rerouted off Hubenak's 30 acres. As admitted by the appellants' counsel, "San Jacinto contacted the Landowners nine (9) times after being told the Landowners did not want the pipeline."

In regard to appellants Wenzel, McAndrew, McCleny, and Sulak, the record shows San Jacinto's right-of-way agent made several contacts with them over a six-week period and was told on at least four different occasions that they did not want the pipeline. As admitted by the appellants' counsel, "San Jacinto contacted the Landowners eight (8) times after being told the Landowners did not want the pipeline."

In regard to the Kutach Family Trust, Darryl Kutach, trustee, the record shows San Jacinto's right-of-way agent made several contacts over a seven-week period and was told the trust did not want to hear any proposal and was opposed to the pipeline. As admitted by the appellants' counsel, "San Jacinto contacted the Landowners fourteen (14) times after being told the Landowners did not want the pipeline."

■■■ What else could San Jacinto have done? Being told by a property owner, in no uncertain terms, that one simply does not want to hear any proposal, or that one simply does not want a pipeline on one's property, demonstrates futility as a matter of law and satisfies the "unable-to-agree" requirement of section 21.012.

### Amount of Compensation

■■■ Again, it must be emphasized that it takes very little to satisfy the negotiate-in-good-faith requirement, and a single offer by a condemnor will satisfy the "unable-to-agree" requirement, if it is a bona fide offer.[3] *Hipp*, 832 S.W.2d at 78.

■■■ Here, the Landowners do not dispute the amount of San Jacinto's offers.

---

**3.** This is illustrated by the fact that the "unable-to-agree" requirement is satisfied when a "landowner 'stands mute' and neither accepts nor rejects [an] offer" as "the law will construe his silence as a rejection of the offer, and ... such a showing constitutes 'a failure to agree' on the part of the parties." *Schlottman v. Wharton County*, 259 S.W.2d 325, 330 (Tex.Civ.App.—Fort Worth 1953, writ dism'd).

The requirement is also satisfied if a condemnor fails to agree with only one of several persons who own interests in the property to be condemned; further efforts to reach an agreement with the other owners are unnecessary. *Texas–New Mexico Power Co. v. Hogan*, 824 S.W.2d 252, 253–54 (Tex.App.— Waco 1992, writ denied).

Instead, their complaints on appeal challenge the method of the offers, alleging that San Jacinto negotiated for three additional property rights that they claim it could not condemn. However, in determining whether the offers were made in good faith, the focus, in line with the jurisdictional purpose of section 21.012, must be on the amount of compensation offered. As stated by the court in *Hipp:*

> [T]he statutory prerequisite may be satisfied if the condemnor makes a single bona fide offer to a landowner that *the condemnor in good faith feels is the amount of compensation due,* and the landowner rejects that offer.

*Id.* (emphasis added). As noted above, to show a bona fide offer was made, a condemnor need only show its offer was based on a reasonably thorough investigation and honest assessment of the amount of just compensation due the landowner. *Id.* at 78–79.

Even assuming that San Jacinto's offers were for more property rights than it sought to or could condemn, the undisputed evidence shows that San Jacinto hired a state-certified general real estate appraiser to calculate the value of the easements and offered the Landowners amounts far greater than the appraiser's valuations.[4] The evidence, again far more than a scintilla, also shows San Jacinto's offers were, in fact, greater than what it, in good faith, considered was the amount of compensation actually due to the Landowners. The Landowners never contested the amount of the offers.

Because the undisputed evidence shows San Jacinto offered the Landowners far more for the easements than their appraised values, and the Landowners did not accept the offers, San Jacinto, in accordance with the purpose of section 12.012, established, as a matter of law, the "unable-to-agree" requirement.

### Bona Fide Offers

■■■ Finally, the Landowners contend that San Jacinto did not make good faith offers because its offers included three additional property rights they claim could not be condemned. The Landowners argue that "logic dictates" a good faith offer must only seek to acquire the rights that the condemnor can lawfully obtain in a condemnation proceeding. In support, they rely on *Brinton v. Houston Lighting & Power Co.,* 175 S.W.2d 707, 709 (Tex. Civ.App.—Galveston 1943, writ ref'd w.o.m.), which held that, in advance of condemnation proceedings, the condemnor must make a bona fide effort to agree with the landowner on the value of the land "if and when taken for condemnation purposes."[5] In *Brinton,* the condemnor's agent freely admitted that he: (1) had no negotiations whatsoever with the landowner about the easement before the condemnation proceedings; (2) had tried to buy an easement of a materially different kind; and (3) was not a "real estate man" and did not know anything about the value of the land. *Id.* at 709.

*Brinton* is distinguishable. In these cases, San Jacinto made good-faith efforts

---

4. For example, in regard to appellants Hubenak and Blahuta, the case was tried to a jury on the sole issue of just compensation, and the jury awarded the Landowners $4,331, which was equal to the real estate appraiser's estimated damages. The final judgment vested the easement rights in San Jacinto and awarded the Landowners compensation on the jury verdict. As a result, San Jacinto's final offer of $13,384 was $9,053 greater than the jury verdict.

5. The *Brinton* case referred to the predecessor to Property Code section 21.012. Act of Feb. 21, 1934, 43d Leg., 2d C.S., ch. 37, § 1, 1934 Tex. Gen. Laws 89, 89 (TEX.REV.CIV. STAT. ANN. art. 3264, since amended and repealed).

to determine the value of the land by hiring a state-certified general real estate appraiser. San Jacinto then offered the Landowners amounts far greater than the appraisals. Moreover, the Landowners presented no evidence that the three additional property rights were material to the value of the land. Nor did they present evidence that the three rights would have made a difference in the amounts which should have been offered.

Notably, San Jacinto never sought to condemn the three additional property rights, but merely sought to purchase them, along with the easements for the natural gas pipeline. Thus, the issue of whether San Jacinto could actually condemn the three additional property rights is simply irrelevant.[6]

The United States and Texas Constitutions, respectively, require either "just compensation" or "adequate compensation" for private property taken for public use. U.S. Const. amend. V; Tex. Const. art. I, § 17. Therefore, our focus must be on the compensation offered. A condemning entity, like any person or entity, is, of course, free to negotiate for, offer to buy, and buy what it desires.

 In conferring jurisdiction, Property Code section 21.012 requires no more than that the condemning entity's offer of what it feels is "just" or "adequate" compensation be based on a "reasonably thorough investigation and honest assessment of the property to be taken." *Hipp*, 832 S.W.2d at 78. This does not limit a condemning entity from negotiating for, offering to buy, and buying more than it may condemn. As long as "just" or "adequate"

compensation is offered for the property to be taken, section 21.012 does not preclude jurisdiction when a condemning entity makes a combined offer for those property rights it may condemn along with any additional property rights it desires.

### Conclusion

We hold the evidence sufficiently shows that San Jacinto satisfied the requirements of Property Code section 21.012 not only because negotiations with the Landowners were in fact futile, but also because San Jacinto made bona fide offers to them. Accordingly, we hold the trial courts properly rendered partial summary judgments that they had jurisdiction in these cases.

We overrule the Landowners' issues presented, and affirm the judgments.

---

**6.** The Landowners argue San Jacinto *negotiated* for more rights than it could have condemned. The cases cited by the Landowners are therefore distinguishable, because they address when a condemnor *actually condemned* for additional rights. *See City of* *Houston v. Hamons*, 496 S.W.2d 662 (Tex.Civ. App.—Houston [14th Dist.] 1973, writ ref'd n.r.e.); *City of Wichita Falls v. Thompson*, 431 S.W.2d 909 (Tex.Civ.App.—Fort Worth 1968, writ ref'd n.r.e.).