CUSACK RANCH CORPORATION, Appellant,

v.

MIDTEXAS PIPELINE COMPANY, Appellee.

No. 13–00–247–CV.

Court of Appeals of Texas, Corpus Christi.

Nov. 29, 2001.

Rehearing Overruled Jan. 24, 2002.

Richard Lee Mcelya, Attorney At Law, William David Noel, Attorney At Law, Angelton, for Appellant.

Thomas E. Sheffield, Attorney At Law, League City, for Appellee.

Before Chief Justice VALDEZ and Justices DORSEY and RODRIGUEZ.

**OPINION**

DORSEY, Justice.

MidTexas Pipeline Company brought a condemnation proceeding against Cusack Ranch Corporation in an effort to acquire a right of way through Cusack's property in which MidTexas planned to construct a pipeline. This is an appeal of a pre-trial summary judgment granted in favor of MidTexas.[1] The issue presented here is, "Did MidTexas satisfy the jurisdictional requirement that it was unable to agree with Cusack on the amount of damages?" We find that it did.

Texas Property Code section 21.012(a) states that:

> If ... a corporation with eminent domain authority ... wants to acquire real property for public use *but is unable to agree with the owner of the property on the amount of damages,* the condemning entity may begin a condemnation proceeding by filing a petition in the proper court.

TEX. PROP. CODE ANN. § 21.012(a) (Vernon 1984) (emphasis added). The requirement that the condemning entity is

---

1. After the summary judgment order was entered, the case proceeded to litigation. This appeal is taken from the final judgment that was entered subsequent to a trial on the merits.

unable to agree with the property owner on the amount of damages prior to instituting a condemnation proceeding has been held to be jurisdictional. *See Hubenak v. San Jacinto Gas Transmission Co.*, Nos. 01–99–00691–CV, 01–99–00959–CV, 01–99–01359–CV, & 01–99–01360–CV, 2000 WL 1056416, at *2 (Tex.App.—Houston [1st Dist.] July 27, 2000, no pet.), superseded on rehearing by 65 S.W.3d 791; *Marburger v. Seminole Pipeline Co.*, 957 S.W.2d 82, 90 n. 10 (Tex.App.—Houston [14th Dist.] 1997, pet. denied); *State v. Schmidt*, 894 S.W.2d 543, 545 n. 1 (Tex.App.—Austin 1995, no writ); *State v. Hipp*, 832 S.W.2d 71, 75 (Tex.App.—Austin 1992), *rev'd on other grounds*, 867 S.W.2d 781 (Tex.1993); *Texas–New Mexico Power Co. v. Hogan*, 824 S.W.2d 252, 253–54 (Tex. App.—Waco 1992, writ denied); *Schlottman v. Wharton County*, 259 S.W.2d 325, 330 (Tex.Civ.App.—Fort Worth 1953, writ dism'd); *but see State v. Dowd*, 867 S.W.2d 781, 783 n. 1. (Tex.1993) (expressly refusing to address the question of whether the failure to engage in good faith negotiations would deprive the trial court of jurisdiction).

In this appeal, Cusack argues that MidTexas did not satisfy the "unable to agree" requirement because its final offer to Cusack would have required Cusack to convey property interests that MidTexas would not have been authorized to obtain through condemnation proceedings. Cu-

sack argues that this fact means the offer was not a bona fide offer, and thus, MidTexas failed to satisfy the unable to agree requirement as a matter of law. We disagree.

MidTexas sought a right of way across Cusack's property for the purpose of installing a natural gas pipeline. After a series of communications between the two parties, MidTexas sent a final offer to Cusack which included a proposed right of way agreement. That agreement contained language that would have conveyed certain rights in addition to the bare right of way. Specifically, the easement would have conveyed to MidTexas the right to transport substances other than natural gas through the pipeline, the right to assign the right of way, and a warranty of title to the property interests conveyed by Cusack.[2] We disagree with Cusack's contention that the inclusion of this language in MidTexas' final offer operates to deprive the court of jurisdiction because it evidences, as a matter of law, a failure of MidTexas to meet the unable to agree requirement. On the contrary, we hold that MidTexas conclusively established through summary judgment evidence that it satisfied the unable to agree requirement by engaging in good faith negotiations with Cusack sufficient to meet the

**2.** The disputed language contained in the proposed right of way agreement is as follows:

Grantor herein grants the right to Grantee to, maintain, inspect, operate, protect, repair, alter, change the size of, replace, relocate, substitute and remove one pipeline, and appurtenant facilities from time to time as deemed by Grantee to be necessary or desirable in connection with the use and convenient operation of the pipeline, for the transportation of gas, *oil, petroleum products, or any other liquids, gases or substances which can be transported through a pipeline* at a location and on a route across, under, upon, over and through the lands of Grantor ... described as follows ....

... unto Grantee, *its successors and assigns,* so long as the rights and easement herein granted shall be used by or useful to Grantee, *its successors and assigns,* for the purposes herein granted; and Grantor hereby binds Grantor and Grantor's heirs, executors, legal representatives, *successors . and assigns,* to warrant and forever defend all and singular said premises unto Grantee, *its successors and assigns,* against every person whomever lawfully claiming the same or any part thereof....
Grantor *covenants* with Grantee *that it* is the owner of the above described land and *has the right, title and capacity to grant* the right-of-way easement hereby granted.
(Emphasis added.)

legal standard imposed on a condemning entity.

## STANDARD OF REVIEW

Because the resolution of this case turns on what are essentially matters of undisputed fact, we are not required to address thorny issues regarding the appropriate standard of review to apply to a trial court's jurisdictional ruling contained in a summary judgment order. *See, e.g., Hubenak*, 2000 WL 1056416, at *3–*4 (addressing the standard of review in such a context and detailing the various approaches used by courts). Here, the parties do not disagree about those facts we perceive to be material to the trial court's determination of the jurisdictional question. Rather, they disagree regarding the legal significance of those facts. Our task, then, is to apply the de novo standard in reviewing the trial court's application of the law to the undisputed facts. *Cf. Goodenbour v. Goodenbour*, 64 S.W.3d 69, 75 (Tex.App.—Austin 2001, no pet.) (applying the de novo standard of review to a trial court's ruling on personal jurisdiction based on undisputed facts).[3]

## THE "UNABLE–TO–AGREE" REQUIREMENT

The question of what satisfies the "unable to agree" requirement has been addressed by several Texas courts. *See Hubenak*, 2000 WL 1056416, at *2–*3, *5; *Hubenak*, 37 S.W.3d at 134; *Hipp*, 832 S.W.2d at 75–78; *Dowd*, 867 S.W.2d at

---

**3.** The specific question of whether the unable to agree requirement has been met is one for the judge, not a jury, to decide. *See Hipp*, at 76; *see also Anderson v. Clajon Gas Co.*, 677 S.W.2d 702, 706 (Tex.App.—Houston [1st Dist.] 1984, no writ) (holding the issue should be resolved through a plea in abatement). A ruling on the question of whether the unable to agree requirement has been met is a jurisdictional concern, most closely analogized to a ruling on a special appearance. *See Hipp*,

782–83; *see also* Laura A. Hanley, Comment, *Judicial Battles Between Pipeline Companies and Landowners: It's not Necessarily Who Wins but by How Much*, 37 HOUS. L. REV. 125, 145–58 (2000) (discussing the various approaches Texas courts have used in resolving the issue). We believe the Austin Court of Appeals in *Hipp* correctly stated the law. *Hipp*, 832 S.W.2d at 75–78. That court stated that a "bona fide attempt to agree" is the requirement. *Id.* at 77. It stated:

> [A]ll that is required is that there shall be a bona fide attempt to agree with the owner, and that there shall be an honest disagreement between the parties as to the compensation which the one is willing to give and the other is willing to receive. A formal offer and refusal is not necessary. Nor is it necessary that there should be a series of offers or prolonged negotiations in order to agree on compensation; an effort to agree is all that is required; and it is sufficient if the negotiations proceed far enough to indicate that an agreement is impossible. If it is apparent that an effort to agree would be unavailing and an offer useless, none need be made. The statute does not contemplate an impossibility to purchase at any price, however large, but merely an unwillingness on the part of the owner to sell at all, or a willingness on his part to sell only at a price which in petitioner's judgment is excessive ....

832 S.W.2d at 75–76. Thus, we would review such a ruling under the same standard as applied to a decision on personal jurisdiction. *See, e.g., Valsangiacomo v. Am. Juice Imp., Inc.*, 35 S.W.3d 201, 205 (Tex.App.—Corpus Christi 2000, no pet.) (reciting the standard of review for a personal jurisdiction ruling); *see also Hubenak*, 65 S.W.3d at 797–98 (treating a ruling on "unable to agree" like a ruling on personal jurisdiction).

*Id.* at 77 (quoting *W.T. Waggoner Estate v. Townsend,* 24 S.W.2d 83, 85 (Tex.Civ.App. 1929, no writ) (quoting 20 C.J. 895, § 318)). We believe that proof the condemning authority engaged in good faith negotiations with the landowner that were ultimately unsuccessful will satisfy this requirement. *See Hubenak,* 37 S.W.3d at 134. "What amounts to good faith and reasonable bargaining depends on the circumstances of the particular case." 29A C.J.S., *Eminent Domain,* § 216, at 510 (1992); *cf. Hipp,* 832 S.W.2d at 77–78 (a single bona fide offer will suffice); *Hogan,* 824 S.W.2d at 253–54 (holding that failure to agree with one of several landowners sufficient attempt at agreement); *see also Houston North Shore Ry. Co. v. Tyrrell,* 128 Tex. 248, 98 S.W.2d 786, 795 (1936) (when an attempt to agree upon value would be futile, no attempt need be made). Evidence that the offer was arbitrary, capricious, or in bad faith would negate a condemning authority's evidence of good faith.[3]

 Under those standards, we hold that MidTexas satisfied the unable to agree requirement by engaging in good faith negotiations with Cusack prior to instituting the condemnation proceeding. MidTexas attached to its motion for summary judgment the affidavit of David M. Dunwoody. Dunwoody was Manager of Right of Way during the time of negotiations with Cusack. His job duties included negotiating with landowners for right of way acquisitions during pipeline construction. Dunwoody stated in his affidavit:

I personally oversaw all negotiations between MidTexas Pipeline Company, acting through its general partners Teco Pipeline Company and Houston Pipe Line Company, and Defendant, for the acquisition of a right-of-way for a natural gas pipeline across its property.... At all times prior to the filing of Mid-Texas Pipeline Company's Petition in Condemnation, Mr. Chegin[, MidTexas' agent for negotiating with the landowners,] and other representatives of Mid-Texas Pipeline Company made it clear that the Company was seeking to acquire an easement for one natural gas pipeline. As with all the landowners along the route, the terms of any proposed easement were always negotiable. Many landowners negotiated satisfactory voluntary agreements with the pipeline company for an easement, changing certain terms from those initially offered and otherwise coming to workable compromises. Nevertheless, the Defendant in this matter was never satisfied with the route of the proposed pipeline. Although MidTexas Pipeline Company's policy is to pay more than fair market value to avoid litigation, demands that require unacceptable terms have to be refused. Such was the case with the present landowner's demands. Considering the Defendant's demands, further negotiations would have been futile.

Various correspondence between Mid-Texas and Cusack were also attached to Dunwoody's affidavit. These letters and notations indicate that negotiations were ongoing between MidTexas and Cusack between December 1994 through May 1995, and also indicate that Cusack's problem with MidTexas' offers was the actual route of the pipeline, and not the additional property rights sought by MidTexas.

Cusack did not negate these contentions in its response to MidTexas' motion for

---

**3.** The only time the Texas Supreme Court spoke on this issue was in *State v. Dowd,* 867 S.W.2d 781 (Tex.1993), which was the appeal of a portion of the *Hipp* decision. The *Dowd* court overturned the appellate court's affir-

mance of a trial court's determination that the condemning entity failed to satisfy the unable to agree requirement, and recited the law in terms of good faith and bad faith. *See id.*

summary judgment. Rather, Cusack's summary judgment evidence focused on the undisputed fact that MidTexas' final written offer contained the terms which Cusack contends are beyond the scope of MidTexas' ability to acquire through condemnation. The fact that MidTexas' final offer contained those terms is not, alone, enough to negate the other evidence showing that MidTexas engaged in a good faith attempt to agree with Cusack regarding the amount of damages. The terms of the final offer made after a series of talks and negotiations regarding the acquisition of the property at issue should not be given an inordinate amount of weight as evidence. Evidence that the talks and negotiations went on over the course of several months, that the landowner was aware of the property interests which were being sought and which might be sought through condemnation, and the fact that no agreement was ever reached may be sufficient to satisfy the unable to agree requirement. *See Anderson v. Clajon Gas Co.,* 677 S.W.2d 702, 706 (Tex.App.—Houston [1st Dist.] 1984, no writ) (evidence showing that condemning authority discussed proposed easements with landowner several times but no agreement could be reached held sufficient to satisfy the "unable to agree" requirement).

Also, the evidence contains notes kept by Dunwoody that indicate that several attempts at communications with Cusack representatives were thwarted by Cusack's failure to respond. At least one Texas court has held that "in a case where the landowner 'stands mute' and neither accepts nor rejects the offer so made to him ... the law will construe his silence a rejection of the offer, and that such a showing constitutes 'a failure to agree' on the part of the parties." *Schlottman v. Wharton County,* 259 S.W.2d 325, 330 (Tex.Civ.App.—Fort Worth 1953, writ dism'd). The undisputed evidence shows that negotiations between MidTexas and Cusack continued for approximately six months prior to MidTexas conveying its final offer. No evidence shows that Cusack ever indicated that it would be amenable to settlement if only the additional property rights contained in the proposed right of way agreement were omitted. We find the evidence, as a whole, establishes that MidTexas engaged in good faith negotiations sufficient to satisfy the requirement that it was unable to agree with Cusack on the amount of damages prior to instituting the condemnation proceeding.

We acknowledge that this approach differs with that taken recently by the First Court of Appeals from Houston in *Hubenak v. San Jacinto Gas Transmission Co.,* 2000 WL 1056416, at *5. Presented with virtually identical facts, that court held that the condemnor's failure to first make an offer including only those rights that it was authorized to acquire through a condemnation proceeding amounted to a lack of good faith as a matter of law. *Id.* at *5. While we agree that formally making such an offer at some point during the course of negotiations is a better approach for the condemnor, we do not agree that failure to make such an offer amounts to bad faith negotiations, or arbitrary or capricious action on the part of the condemnor as a matter of law. *See id.*

We also recognize that the Eastland Court of Appeals has recently heard a similar case as well. *See Hubenak,* 37 S.W.3d at 136–37.[4] Again, in a case with facts virtually identical to the instant case, the Eastland court held that *neither* the landowner nor the condemnor had conclusively established *either* the existence or lack of good faith, and thus, genuine issues

4. This case is related to the *Hubenak* case out of the First District Court in Houston.

of material fact existed requiring a remand to the trial court for a factual determination. *Id.* at 137–37. The present case is distinguishable on the basis that it is decided on undisputed facts.

We believe our approach is in keeping with the purpose of the "unable to agree" requirement, which is to "forestall litigation and to prevent needless appeals to the courts when the matter might have been settled by negotiations between parties." *Nueces County v. Rankin,* 303 S.W.2d 455, 457 (Tex.Civ.App.—Eastland 1957, no writ). An overly technical or rigid interpretation of the "unable to agree" requirement would thwart this purpose. The condemnor's burden should not be onerous in establishing that it attempted, in good faith, to agree with the landowner on the amount of damages sufficient to satisfy Texas Property Code section 21.012(a). We believe the law to be that:

> A formal offer and refusal are not necessary; nor is it necessary that there should be a series of offers or prolonged negotiations in order to agree on compensation; an effort to agree is all that is required. No special or set form of words is necessary to prove inability to agree, and where the court is satisfied that the condemnor made its last and best offer, and that it was refused, there is inability to agree. It is sufficient if the negotiations proceed far enough to indicate that an agreement is impossible, and, where it is apparent that the parties cannot agree on the amount to be paid, a formal effort to agree is not necessary.

29A C.J.S., *Eminent Domain* § 216, at 510–11 (1992). We hold that the undisputed evidence establishes that MidTexas engaged in good faith negotiations sufficient to satisfy the "unable to agree" requirement imposed by the condemnation statute.

Accordingly, we AFFIRM the judgment of the trial court.