Reversed and Remanded in Cause No









Reversed and Remanded in Cause No. 14-00-01392-CV; Reversed and Rendered in
Cause No. 14-01-01209-CV; and Opinion filed July 3, 2002.

 

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NOS.
14-00-01392-CV

                    14-01-01209-CV

____________

 

EXXONMOBIL PIPELINE COMPANY,
Appellant

 

V.

 

HARRISON INTERESTS, LTD.,
Appellee

 



 

On
Appeal from the County Court at Law No. 2

Fort Bend County, Texas

Trial
Court Cause No. 13,616

 



 

O
P I N I O N

In
these consolidated cases, appellant ExxonMobil Pipeline Company (AExxonMobil@)
appeals from a dismissal of its condemnation proceeding for lack of
jurisdiction and a final judgment for the landowner, appellee Harrison
Interests, Ltd. (AHarrison@), awarding damages resulting from ExxonMobil=s
possession of the property it sought to condemn.  We reverse the dismissal of the condemnation
proceeding and remand for further proceedings, and we reverse and render final
judgment on the damages award. 








FACTUAL
AND PROCEDURAL BACKGROUND

ExxonMobil
is a common carrier vested with the power of eminent domain.  In March of 1995, ExxonMobil determined that
there was a public necessity to construct a common carrier pipeline from the
Katy Gas Plant in Waller County, Texas, through Fort Bend County, Texas, to a
location near Damon Junction in Brazoria County, Texas.  In connection with that project, ExxonMobil
also determined that there was a public necessity to acquire a permanent
right-of-way and easement across a 473-acre tract owned by Harrison in northern
Fort Bend County.  The easement was to be
fifty feet wide and 8,000 feet long, or 9.19 acres.

ExxonMobil
attempted to negotiate with Harrison to acquire a permanent easement and a
temporary construction easement.  The
negotiations were unsuccessful, however, and on June 20, 1995, ExxonMobil made
Harrison a final offer of $45,950.00 for the easements.  Enclosed with ExxonMobil=s
final offer letter was a form easement and right-of-way agreement detailing the
rights and interests it sought to acquire. 
Harrison was given ten days to accept the offer.  ExxonMobil=s letter informed Harrison that in the event Harrison did not
accept the final offer, ExxonMobil would initiate eminent domain
proceedings.  Although  Harrison received the letter, he did not
contact ExxonMobil within the ten-day period or at any time thereafter. 

Having
received no response to its final offer letter, on August 2, 1995, ExxonMobil
filed its Statement and Petition in Condemnation seeking to take the
easement.  After a special commissioners=
hearing at which Harrison did not appear, ExxonMobil deposited the amount of
compensation determined by the commissioners, $7,858.00, into the registry of
the court, took possession of the easement, and installed the pipeline. 








Prior
to trial on the issue of just compensation, ExxonMobil moved for partial
summary judgment on its right to condemn, asserting that no disputed facts were
before the trial court.  Harrison
responded to the motion and filed a cross motion for partial summary judgment,
arguing that the trial court had no jurisdiction because ExxonMobil did not
conduct good faith negotiations with Harrison prior to the condemnation
proceeding.  Harrison contended that,
among other things, ExxonMobil failed to negotiate in good faith by requiring
Harrison to grant it rights which ExxonMobil was not entitled to obtain in a
condemnation proceeding, including (1) the unrestricted right to assign the
easement; and (2) the obligation of Harrison to warrant and defend title to the
easement.  

Following
a hearing on the cross motions for partial summary judgment, the trial court
found that ExxonMobil had negotiated in good faith and ruled that ExxonMobil
had the power to condemn the property sought in its petition.  Subsequently, however, the First Court of
Appeals decided a condemnation case against the condemnor in a factually
similar case.  Harrison then moved to
dismiss Exxon=s condemnation proceeding for want of jurisdiction on the basis
of the new authority.  On August 4, 2000,
the trial court granted Harrison=s motion.  

After
Exxon=s
condemnation case was dismissed, Harrison sought a trial on damages resulting
from ExxonMobil=s possession of the property, and attorney=s
and expert fees as allowed by the Texas Property Code.  Following the trial, the trial court signed a
final judgment on December 21, 2000 awarding Harrison $28,809.80 in
professional fees and expenses, $110,000.00 in attorney=s
fees through trial and appeal, $151,922.64 in damages through October 20, 2000,
$102,534.92 in future damages through October 19, 2003, $75,961.32 in
prejudgment interest accruing at the rate of $41.62 per day from October 18,
2000 until judgment, and postjudgment interest. 
ExxonMobil was also ordered to pay all costs.  

ANALYSIS








In
this consolidated appeal, Exxon appeals the dismissal of its condemnation case
for want of jurisdiction and the final judgment in favor of Harrison.  Because we find that the appeal of the
dismissal for want of jurisdiction on the issue of the statutory good faith
negotiation requirement is dispositive of the appeal of the final judgment, we
will begin there.

The
Good Faith Negotiation Requirement

ExxonMobil
contends that it negotiated in good faith prior to filing its condemnation case
because, after unsuccessful negotiations with Harrison for the easement, it
made Harrison a final offer for an amount well in excess of the easement=s
appraised value, but received no response. 
Harrison argues that ExxonMobil did not negotiate in good faith because
it sought to acquire two property rights it could not obtain by condemnation,
specifically (1) the unrestricted right to assign the easement, and (2) the
obligation of Harrison to warrant and defend title to the easement.[1]  

In
order to avoid the time and expense of a condemnation proceeding, a condemnor
is required to negotiate in good faith with a landowner for the property rights
the condemnor is attempting to acquire before filing a condemnation proceeding.  Mercier v. MidTexas Pipeline Co., 28
S.W.3d 712, 720 (Tex.
App.CCorpus Christi 2000, pet. denied); Schlottman v. Wharton County, 259
S.W.2d 325, 330 (Tex.
Civ. App.CFort Worth 1953, writ dism=d).  The requirement of
good faith negotiations, also known as the Aunable to agree@ requirement, is found in section 21.012 of the Texas Property
Code, which provides as follows:








(a)       If _ a
corporation with eminent domain authority _ wants
to acquire real property for public use but is unable to agree with the
owner of the property on the amount of damages, the condemning entity may begin
a condemnation proceeding by filing a petition in the proper court.

(b)       The
petition must:

_

(4) state that the entity and the property owner are unable
to agree on the damages.

Tex. Prop. Code Ann. '
21.012 (Vernon 1984) (emphasis added). 
The Aunable to agree@ condition refers to a bona fide attempt to agree on damages
and includes a bona fide offer by the condemnor to pay the estimated true value
of the land.  Hubenak v. San Jacinto
Gas Transmission Co., 65 S.W.3d 791, 797 (Tex. App.CHouston [1st Dist.] 2002, pet. filed); State v. Schmidt, 894 S.W.2d 543,
544-45 (Tex. App.CAustin
1995, no writ).  Evidence that an offer
was arbitrary, capricious, or in bad faith will negate a condemning authority=s
evidence of good faith.  Cusack Ranch
Corp. v. MidTexas Pipeline Co., 71 S.W.3d 395, 399 (Tex. App.CCorpus Christi 2001, pet. filed). 

The
condemnor has the burden of pleading and proving that before it initiated the
condemnation proceeding, it was unable to agree with the landowner as to the
amount of damages that would result from the taking of the landowner=s
property.  Hubenak, 65 S.W.3d at
796; State v. Hipp, 832 S.W.2d 71, 75 (Tex. App.CAustin
1992), rev=d in part on other grounds,
867 S.W.2d 781 (Tex. 1993).  The
condemnor=s duty to engage in good faith negotiations to acquire the property
is a jurisdictional requirement to filing suit under section 21.012.  Hubenak, 65 S.W.3d at 797; Schmidt,
543 S.W.2d at 545 n.1.[2]  








Here,
the trial court initially found in favor of ExxonMobil, but subsequently
granted Harrison=s plea to the jurisdiction on the authority of Hubenak v.
San Jacinto Gas Transmission Co., Nos. 01‑99‑00691‑CV, 01‑99‑00959‑CV,
01‑99‑01359‑CV and 01‑99‑01360‑CV, 2000 WL
1056416 (Tex. App.CHouston [1st Dist.] July 27, 2000), opinion withdrawn and superseded on
rehearing, 65 S.W.3d 791 (Tex.
App.CHouston [1st Dist.] 2001, pet. filed).  In
their appellate briefs, both parties concentrated their arguments on the
correctness of that decision.  However,
as the citation indicates, the First Court of Appeals has since withdrawn that
opinion and issued a substituted opinion.[3]  Therefore, we will briefly review the holding
of the original Hubenak opinion, and then consider the application of
the good faith negotiation requirement to this case under existing case law.

In
the original Hubenak opinion, the First Court of Appeals held that San Jacinto Gas
Transmission Company, a gas utility, did not negotiate in good faith to acquire
easements in connection with a pipeline construction project because its offers
to purchase the easements from the landowners included three additional
property rights that were not included in its board of director=s resolution approving the
project.  These rights were:  (1) the right to transport substances in
addition to natural gas; (2) the obligation to warrant and defend title to the
easement; and (3) the right to assign the easement to any person or entity.  The landowners had also argued, as does
Harrison, that the additional rights sought could not be condemned, but the
court did not reach that argument.  








On
motion for rehearing, the First Court of Appeals withdrew its original opinion
and issued a substituted opinion, this time holding in favor of the
condemnor.  In the substituted opinion,
the court did not require that the condemnor=s board resolution specify the property rights being
negotiated.  Instead, the court held that
in determining whether an offer was made in good faith, the focus must be on
the amount of compensation offered.  Hubenak,
65 S.W.3d at 800, 801.  In reaching its
conclusion, the court stressed that the sole purpose of Property Code section
21.012 and its predecessor statutes was to A>forestall
litigation and to prevent needless appeals to the courts when the matter may
have been settled by negotiations between the parties.=@  Id. at 797
(citing County of Nueces v. Rankin, 303 S.W.2d 455, 457 (Tex. Civ. App.CEastland 1957, no writ)).

In
reaching its conclusion, the Hubenak court emphasized that Ait
takes very little to satisfy the negotiate-in-good-faith requirement.@  Id. at 798.  To show a bona fide offer was made, the Hubenak
court explained, Athe condemnor need only show its offer was based on a
reasonably thorough investigation and honest assessment of the amount of just
compensation due the landowner.@  Id.  The court noted that even a single offer by a
condemnor would satisfy the requirement, if it was a bona fide offer.  Id. at 798.  Because the undisputed evidence demonstrated
that San Jacinto offered the landowners far more for the easements than their
appraised values, and the landowners did not accept them, the Hubenak
court found that San Jacinto satisfied the unable-to-agree requirement as a
matter of law.  Id.  The court also found that San Jacinto
demonstrated that further negotiations would be futile.  Id. at 798-99. 

As
in the present case, the Hubenak landowners argued that San Jacinto=s
offers were not made in good faith because they included additional property
rights that San Jacinto could not lawfully obtain in a condemnation
proceeding.  Id. at 800.  The Hubenak court rejected this
argument: 

In these cases, San Jacinto made good-faith efforts to
determine the value of the land by hiring a state-certified general real estate
appraiser.  San Jacinto then offered the
Landowners amounts far greater than the appraisals.  Moreover, the Landowners presented no
evidence that the three additional property rights were material to the value
of the land.  Nor did they present
evidence that the three rights would have made a difference in the amounts
which should have been offered.








Id. at 800-01. 
Additionally, the court noted that San Jacinto never sought to condemn
the three additional property rights, but merely sought to purchase them along
with the easements; therefore, the issue of whether San Jacinto could actually
condemn the three additional property rights was Asimply irrelevant.@  Id. at 801.

Focusing
on the amount of compensation offered, the Hubenak court concluded that
the trial court=s jurisdiction was not precluded merely because San Jacinto
sought to obtain in negotiations additional rights beyond those it may
condemn.  As the court explained:

In conferring
jurisdiction, Property Code section 21.012 requires no more than that the condemning
entity=s
offer of what it feels is Ajust@ or Aadequate@ compensation be based on a Areasonably thorough investigation and honest assessment of the
property to be taken.@  Hipp, 832 S.W.2d
at 78.  This does not limit a condemning
entity from negotiating for, offering to buy, and buying more than it may
condemn.  As long as Ajust@
or Aadequate@
compensation is offered for the property to be taken, section 21.012 does not
preclude jurisdiction when a condemning entity makes a combined offer for those
property rights it may condemn along with any additional property rights it
desires.

Id. at 801. 








At
least one other court of appeals has considered the argument Harrison raises in
response to Exxon=s appeal C that the condemnor did not negotiate in good faith when it
sought more property rights than could be condemned C
and reached the same conclusion as the Hubenak court.  See Cusack Ranch Corp. v. MidTexas
Pipeline Co., 71 S.W.3d 395 (Tex. App.CCorpus Christi
2001, pet. filed).[4]  In Cusack, the landowners complained
that MidTexas=s proposed agreement would have conveyed to MidTexas the right
to transport substances other than natural gas through the pipeline, the right
to assign the right-of-way, and a warranty of title to the property interests
conveyed.  Id. at 397.  The Cusack court held that the fact
that MidTexas=s final offer contained those terms was not, alone, enough to
negate other evidence of MidTexas=s attempt to engage in good faith negotiations with the
landowners.  Id. at 400.  The court reasoned that an overly technical
or rigid interpretation of the unable-to-agree requirement would thwart its
purpose of forestalling litigation and preventing needless appeals to the
courts when the matter might have been settled by negotiations between parties.  Id. at 401.  








The
only authority we are aware of that has rejected the reasoning of Hubenak
and Cusack is MidTexas Pipeline Co. v. Dernehl, 71 S.W.3d 883 (Tex. App.CTexarkana 2002, pet. filed).  In Dernehl,
a majority of the court held that an offer to purchase property that included
rights or properties in addition to the property to be condemned was not enough
to satisfy the good faith negotiation requirement.  Id.
at 858.  On
rehearing, the Dernehl court clarified its opinion, explaining that it
did not state or imply that a condemnor could not make offers for and purchase
property and rights which it could not acquire by condemnation proceedings;
however, such an offer should be made separate and apart from the offer made as
a prerequisite by law to condemnation.  Id.
at 861 (op. on reh=g).  Further, the court
stated that Aa threat or pretense of condemnation made by the condemnor on
land or for rights not subject to condemnation and made in order to obtain
additional property or rights constitutes a wrongful act and an abuse of the
right of eminent domain.@  Id.  The court cited no authority for these
conclusions.  Justice Cornelius issued a
dissenting opinion on rehearing, adding to his dissent to the original opinion,
in which he argued that the majority=s conclusion was directly contrary to the recently decided
cases of Hubenak and Cusack.[5]  He also noted that the only case supporting
the majority was the original Hubenak opinion that had been
withdrawn.  Id.  As Justice Cornelius argued, Aif
the majority view prevails here it will add confusion to the law of eminent
domain and if followed generally, will thwart the legislative purposes to
simplify eminent domain proceedings and to lessen the likelihood of necessary
litigation and appeals.@  Id.

We
agree with the reasoning expressed by Justice Cornelius and the Hubenak
and Cusack courts.  The inclusion
of additional property rights that may or may not be condemnable in a final
offer prior to condemnation does not evidence, as a matter of law, the
condemnor=s failure to negotiate in good faith.  See Hubenak, 65 S.W.3d at 800; Cusack,
71 S.W.3d at 400.  In determining whether
a condemnor negotiated in good faith, the focus of the determination of the
jurisdictional requirement must be on the amount of compensation offered.  Hubenak, 65 S.W.3d at 800.  To hold otherwise would unnecessarily
complicate the negotiation process and frustrate the purpose behind the good
faith negotiation requirement of promoting the resolution of property
acquisitions through negotiations rather than litigation.

Application
of the Good Faith Negotiation Requirement to the Facts








Having
reviewed the case law on the statutory requirement of good faith negotiations,
we now consider whether Exxon demonstrated that it engaged in good faith
negotiations prior to initiating its condemnation proceeding.  We begin by reviewing the facts supporting
the findings of good faith negotiations in Hubenak and Cusack.  In Hubenak, the record showed that San
Jacinto=s
representative contacted the landowners several times over a period of several
weeks and was informed that the landowners did not want a pipeline on their
property.  Hubenak, 65 S.W.3d at
799.  The Hubenak court held that
being told by a property owner, in no uncertain terms, that one simply does not
want to hear any proposal, or that one simply does not want a pipeline on one=s
property, demonstrated futility as a matter of law and satisfied the Aunable-to-agree@
requirement.  Id.  Further, the record showed that San Jacinto=s
offers were for much more than the amount determined by an independent
appraiser, and the landowners presented no evidence that the additional
property rights sought were material to the value of the land or that the
rights would have made a difference in the amounts that should have been
offered.  Id. at 800-01.  The court found that, on the basis of this
evidence, San Jacinto had demonstrated both that negotiations with the landowners
were futile, and that San Jacinto had made bona fide offers to them.  Id. at 801.

In
Cusack, the court found that the condemnor, MidTexas, had satisfied the
good faith negotiation requirement by showing that its representatives had
engaged in negotiations for a pipeline easement for some time with the
landowner, who objected to the route of the pipeline.  Cusack, 71 S.W.3d at 399.  During the negotiations, the landowner did
not object to the terms it later contended were beyond MidTexas=
power to condemn, even though those terms were included in the final
offer.  Id. at 399-400.  Further, on several occasions, the landowner
failed to respond to MidTexas=s attempted communications. 
Id. at 400.  The Cusack court
found that the evidence, taken as a whole, showed that Mid Texas engaged in
good faith negotiations sufficient to satisfy the requirement that it was
unable to agree with the landowner on the amount of damages prior to instituting
the condemnation proceeding.  Id. 

Here,
ExxonMobil submitted the affidavit of W.G. Bush in support of its motion for
partial summary judgment on its right to condemn and in response to Harrison=s
plea to the jurisdiction.  Bush was
responsible for negotiating and attempting to acquire easements from the
landowners in connection with the pipeline project, and he negotiated for the
easement in question from Harrison.  In
his affidavit, Bush stated that prior negotiations with Harrison had been
unsuccessful, and in a final attempt to negotiate, he mailed Harrison the June
20, 1995 letter containing the final offer of $45,950.00 for the permanent
easement and the temporary construction easement.  Included with the letter was the proposed
easement and right-of-way agreement setting out the rights and interests
ExxonMobil sought to acquire and those to be reserved to Harrison.  Bush also stated that, prior to making the
offer, he had received an appraisal indicating that the value of the easements,
any and all improvements located on the easements, and all damages, if any, to
the landowner=s remainder property, was $7,858.00.  He stated that the offer of $45,950.00 was
the highest amount that ExxonMobil was willing to pay.  








Additionally,
Bush stated that the final offer was mailed by certified mail, return receipt
requested, and he received the return receipt a number of days after it was
mailed, indicating that Harrison had received it on July 13, 1995.  According to Bush, Harrison did not respond
to the letter within ten days, and in fact had never responded to the
letter.  Bush also stated that Harrison=s
failure to respond in accordance with the terms of the final offer letter
constituted a rejection of the final offer, and led him to the conclusion that
further negotiations would be futile.

Harrison
does not dispute any aspect of this evidence. 
Instead, its complaint is solely that Exxon did not negotiate in good
faith because it included in its proposal the right to assign the easement and
the obligation on Harrison to warrant title to the easement, which Harrison
contends are property rights that cannot be condemned.[6]  However, as we have determined, the inclusion
of those property rights alone does not require a finding that ExxonMobil
failed, as a matter of law, to engage in good faith negotiations.  








Unlike
the situations in Hubenak and Cusack, we have no evidence of the
substance of whatever negotiations took place between Bush and Harrison prior
to ExxonMobil=s issuance of the final offer letter, and we have no evidence
of the length of time over which any negotiations took place.  However, the Hubenak court emphasized
that it takes very little to satisfy the requirement that a condemnor negotiate
in good faith.  Hubenak, 65 S.W.3d
at 798-99.  Indeed, as the court stated,
a single offer by a condemnor may satisfy the requirement, if it is a bona fide
offer.  Id. at 798; Hipp,
832 S.W.2d at 78.  And, when a landowner
makes no response to such an offer, his silence will be construed as a
rejection of the offer, which is sufficient to demonstrate that the parties are
unable to agree.  Hubenak, 65 S.W.3d
at 798; Schlottman, 259 S.W.2d at 330-31.  

In
the present case, it is undisputed that ExxonMobil made Harrison a final offer
of $45,950.00, an amount far in excess of an appraiser=s
valuation at $7,858.00, but Harrison did not respond within the time limit set out
in the final offer or thereafter.  It is
also undisputed that Harrison never complained about the inclusion of the
additional property rights or interests in the final offer or indicated that
ExxonMobil=s offering price should be adjusted to compensate for
them.  We hold that, on these facts,
ExxonMobil demonstrated that it satisfied the good faith negotiation
requirement of section 21.012 of the Property Code.  

Accordingly,
we sustain ExxonMobil=s issue on appeal in Cause No. 14-00-01392-CV.  The trial court=s order of August 4, 2000 dismissing Exxon=s
condemnation proceeding for want of jurisdiction is reversed, and we remand
this case to the trial court for further proceedings in accordance with this
opinion.  Additionally, because we find
that ExxonMobil had the right and power to condemn the property at issue, we
also reverse the final judgment in Cause No. 14-01-01209-CV and render a
take-nothing judgment against Harrison. 

 

 

 

/s/        Leslie
Brock Yates

Justice

 

 

Judgment rendered and Opinion filed July
3, 2002.

Panel consists of Justices Yates, Hudson
and Edelman.

Publish C Tex. R. App. P.
47.3(b).

 











[1]  The specific
language in the proposed easement and right-of-way agreement Harrison
complains  of with regard to
assignability is found in the introductory paragraph of the agreement, which
required Harrison to agree to AGRANT, BARGAIN, SELL and CONVEY unto Exxon . . ., its successor
and assigns, all of the following: _@ (emphasis added). 
The language Harrison complains of regarding warranty of title is as
follows: 

 

TO HAVE AND TO HOLD the Easement and the Temporary Construction
Easement for the term thereof unto said Exxon, its successors and assigns
forever, and Owner hereby binds Owner, Owner=s heirs,
executors, administrators and assigns to warrant and forever defend all and
singular the Easement and the Temporary Construction Easement for the term
thereof, and the property, rights and interests above-described, unto Exxon,
its successors and assigns, against every person whomsoever lawfully claiming
or to claim the same or any part thereof. 






[2]  Other
courts have held that a ruling on a condemnor=s
satisfaction of the jurisdictional requirement of good faith negotiations is
most closely analogized to a ruling on personal jurisdiction.  See Cusack, 71 S.W.3d at 398 & n.3
(citing Hipp, 832 S.W.2d at 75-76). 
Therefore, while we are aware of some uncertainty regarding the
applicable standard of review in similar cases, compare Cusack, 71
S.W.3d at 398 n.3, with Hubenak, 65 S.W.3d at 797-98, and MidTexas
Pipeline Co. v. Dernehl, 71 S.W.3d 852, 856 (Tex. App.CTexarkana 2002, pet.
filed), we see no reason to distinguish this jurisdictional issue from that of
personal jurisdiction.  Accordingly, we
review the trial court=s resolution of
questions of law de novo and its determination of underlying factual disputes
for sufficiency of the evidence.  See
Cusack, 71 S.W.3d at 398; Hipp, 832 S.W.2d at 76; see also Old
Kent Leasing Servs. Corp. v. McEwan, 38 S.W.3d 220, 255 (Tex. App.CHouston
[14th Dist.] 2001, no pet.) (setting out the
appropriate standard of review of personal jurisdiction issue).





[3]  The
parties have submitted additional briefing addressing this development and
related cases that have been decided since the original briefing was submitted
to this court.  





[4]  Interestingly,
the Cusack court=s opinion, which was released prior to the substituted
Hubenak opinion, rejected the reasoning of the original Hubenak
opinion.  See Cusack, 71 S.W.3d at
400.





[5]  Justice
Cornelius also referenced another case, Hubenak v. San Jacinto Gas
Transmission Co., 37 S.W.3d 133 (Tex. App.CEastland
2001, pet. denied), in which the Eastland Court of Appeals, in another case
involving the same rights and obligations sought in the Hubenak case
before the First Court of Appeals, reversed a summary judgment for San Jacinto
because it found that a fact question existed on whether San Jacinto negotiated
in good faith.  Dernehl, 71 S.W.3d
at 682 & n.3 (Cornelius, J. dissenting on rehearing).





[6]  In the fact
section of its appellate brief, Harrison disputes Exxon=s valuation of the easement and its characterization
of the negotiations.  However, the only
evidence Harrison points to in support of its valuation argument is the jury=s award at the trial on damages of $151,922.64 as
reasonable rental value for the easement for five years, which Harrison
contends works out to a Aper rod@ market
value of $626.50 compared to ExxonMobil=s final
offer of roughly $95 per rod (a Arod@ is a linear measurement of 16.5 feet).  To refute ExxonMobil=s characterization of the negotiations, Harrison
points to certain responses to one of ExxonMobil=s
requests for admissions, filed October 17, 2000.  However, we note that this evidence was not
before the trial court at the time it ruled on Harrison=s plea to the jurisdiction and motion to dismiss.  And, in any event, it does not contradict
ExxonMobil=s evidence that it made Harrison a final offer for the
easement in excess of its appraised value, and that Harrison failed to respond
to the offer or otherwise indicate that it objected to the inclusion of the
additional property rights made the basis of its argument on appeal.