**EXXONMOBIL PIPELINE COMPANY, Appellant,**

v.

**HARRISON INTERESTS, LTD., Appellee.**

Nos. 14–00–01392–CV, 14–01–01209–CV.

Court of Appeals of Texas, Houston (14th Dist.).

July 3, 2002.

Rehearing Overruled Aug. 29, 2002.

Joy M. Soloway, Stephen K. Carroll, Houston, for appellant.

Richard L. McElya, Angleton, for appellee.

Panel consists of Justices YATES, HUDSON and EDELMAN.

## OPINION

LESLIE BROCK YATES, Justice.

In these consolidated cases, appellant ExxonMobil Pipeline Company ("ExxonMobil") appeals from a dismissal of its condemnation proceeding for lack of jurisdiction and a final judgment for the landowner, appellee Harrison Interests, Ltd. ("Harrison"), awarding damages resulting from ExxonMobil's possession of the property it sought to condemn. We reverse the dismissal of the condemnation proceeding and remand for further proceedings, and we reverse and render final judgment on the damages award.

## FACTUAL AND PROCEDURAL BACKGROUND

ExxonMobil is a common carrier vested with the power of eminent domain. In March of 1995, ExxonMobil determined that there was a public necessity to construct a common carrier pipeline from the Katy Gas Plant in Waller County, Texas, through Fort Bend County, Texas, to a location near Damon Junction in Brazoria County, Texas. In connection with that project, ExxonMobil also determined that there was a public necessity to acquire a permanent right-of-way and easement across a 473–acre tract owned by Harrison in northern Fort Bend County. The easement was to be fifty feet wide and 8,000 feet long, or 9.19 acres.

ExxonMobil attempted to negotiate with Harrison to acquire a permanent easement and a temporary construction easement. The negotiations were unsuccessful, however, and on June 20, 1995, ExxonMobil made Harrison a final offer of $45,950.00 for the easements. Enclosed with ExxonMobil's final offer letter was a form easement and right-of-way agreement detailing the rights and interests it sought to acquire. Harrison was given ten days to accept the offer. ExxonMobil's letter informed Harrison that in the event Harrison did not accept the final offer, ExxonMobil would initiate eminent domain proceedings. Although Harrison received the letter, he did not contact ExxonMobil within the ten-day period or at any time thereafter.

Having received no response to its final offer letter, on August 2, 1995, ExxonMobil filed its Statement and Petition in Condemnation seeking to take the easement. After a special commissioners' hearing at which Harrison did not appear, ExxonMobil deposited the amount of compensation determined by the commissioners, $7,858.00, into the registry of the court, took possession of the easement, and installed the pipeline.

Prior to trial on the issue of just compensation, ExxonMobil moved for partial summary judgment on its right to condemn, asserting that no disputed facts were before the trial court. Harrison responded to the motion and filed a cross motion for partial summary judgment, arguing that the trial court had no jurisdiction because ExxonMobil did not conduct good faith negotiations with Harrison prior to the condemnation proceeding. Harrison contended that, among other things, ExxonMobil failed to negotiate in good faith by requiring Harrison to grant it rights which ExxonMobil was not entitled to obtain in a condemnation proceeding, including (1) the unrestricted right to assign the easement; and (2) the obligation of Harrison to warrant and defend title to the easement.

Following a hearing on the cross motions for partial summary judgment, the trial court found that ExxonMobil had negotiated in good faith and ruled that ExxonMobil had the power to condemn the property sought in its petition. Subsequently, however, the First Court of Appeals decided a condemnation case against the condemnor in a factually similar case. Harrison then moved to dismiss Exxon's condemnation proceeding for want of jurisdiction on the basis of the new authority. On August 4, 2000, the trial court granted Harrison's motion.

After Exxon's condemnation case was dismissed, Harrison sought a trial on damages resulting from ExxonMobil's possession of the property, and attorney's and expert fees as allowed by the Texas Property Code. Following the trial, the trial court signed a final judgment on December 21, 2000 awarding Harrison $28,809.80 in professional fees and expenses, $110,000.00 in attorney's fees through trial and appeal, $151,922.64 in damages through October 20, 2000, $102,534.92 in future damages through October 19, 2003, $75,961.32 in prejudgment interest accruing at the rate of $41.62 per day from October 18, 2000 until judgment, and post-judgment interest. ExxonMobil was also ordered to pay all costs.

## ANALYSIS

In this consolidated appeal, Exxon appeals the dismissal of its condemnation case for want of jurisdiction and the final judgment in favor of Harrison. Because we find that the appeal of the dismissal for want of jurisdiction on the issue of the statutory good faith negotiation requirement is dispositive of the appeal of the final judgment, we will begin there.

### The Good Faith Negotiation Requirement

ExxonMobil contends that it negotiated in good faith prior to filing its condemnation case because, after unsuccessful negotiations with Harrison for the easement, it made Harrison a final offer for an amount well in excess of the easement's appraised value, but received no response. Harrison argues that ExxonMobil did not negotiate in good faith because it sought to acquire two property rights it could not obtain by condemnation, specifically (1) the unrestricted right to assign the easement, and (2) the obligation of Harrison to warrant and defend title to the easement.[1]

In order to avoid the time and expense of a condemnation proceeding, a condemnor is required to negotiate in good faith with a landowner for the property rights the condemnor is attempting to acquire before filing a condemnation proceeding. *Mercier v. MidTexas Pipeline Co.*, 28 S.W.3d 712, 720 (Tex.App.-Corpus Christi 2000, pet. denied); *Schlottman v. Wharton County*, 259 S.W.2d 325, 330 (Tex.Civ.App.-Fort Worth 1953, writ

1. The specific language in the proposed easement and right-of-way agreement Harrison complains of with regard to assignability is found in the introductory paragraph of the agreement, which required Harrison to agree to "GRANT, BARGAIN, SELL and CONVEY unto Exxon ..., its *successor and assigns,* all of the following: ..." (emphasis added). The language Harrison complains of regarding warranty of title is as follows:

TO HAVE AND TO HOLD the Easement and the Temporary Construction Easement for the term thereof unto said Exxon, its successors and assigns forever, and Owner hereby binds Owner, Owner's heirs, executors, administrators and assigns to warrant and forever defend all and singular the Easement and the Temporary Construction Easement for the term thereof, and the property, rights and interests above-described, unto Exxon, its successors and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof.

dism'd). The requirement of good faith negotiations, also known as the "unable to agree" requirement, is found in section 21.012 of the Texas Property Code, which provides as follows:

> (a) If ... a corporation with eminent domain authority ... wants to acquire real property for public use but is *unable to agree* with the owner of the property on the amount of damages, the condemning entity may begin a condemnation proceeding by filing a petition in the proper court.
>
> (b) The petition must:
>
> ...
>
> (4) state that the entity and the property owner are *unable to agree* on the damages.

TEX. PROP.CODE ANN. § 21.012 (Vernon 1984) (emphasis added). The "unable to agree" condition refers to a bona fide attempt to agree on damages and includes a bona fide offer by the condemnor to pay the estimated true value of the land. *Hubenak v. San Jacinto Gas Transmission Co.*, 65 S.W.3d 791, 797 (Tex.App.-Houston [1st Dist.] 2002, pet. filed); *State v. Schmidt*, 894 S.W.2d 543, 544–45 (Tex. App.-Austin 1995, no writ). Evidence that an offer was arbitrary, capricious, or in bad faith will negate a condemning authority's evidence of good faith. *Cusack Ranch Corp. v. MidTexas Pipeline Co.*, 71

S.W.3d 395, 399 (Tex.App.-Corpus Christi 2001, pet. filed).

The condemnor has the burden of pleading and proving that before it initiated the condemnation proceeding, it was unable to agree with the landowner as to the amount of damages that would result from the taking of the landowner's property. *Hubenak*, 65 S.W.3d at 796; *State v. Hipp*, 832 S.W.2d 71, 75 (Tex.App.-Austin 1992), *rev'd in part on other grounds*, 867 S.W.2d 781 (Tex.1993). The condemnor's duty to engage in good faith negotiations to acquire the property is a jurisdictional requirement to filing suit under section 21.012. *Hubenak*, 65 S.W.3d at 797; *Schmidt*, at 545, n. 1.[2]

Here, the trial court initially found in favor of ExxonMobil, but subsequently granted Harrison's plea to the jurisdiction on the authority of *Hubenak v. San Jacinto Gas Transmission Co.*, Nos. 01–99–00691–CV, 01–99–00959–CV, 01–99–01359–CV and 01–99–01360–CV, 2000 WL 1056416 (Tex.App.-Houston [1st Dist.] July 27, 2000), *opinion withdrawn and superseded on rehearing*, 65 S.W.3d 791 (Tex. App.-Houston [1st Dist.] 2001, pet. filed). In their appellate briefs, both parties concentrated their arguments on the correctness of that decision. However, as the citation indicates, the First Court of Appeals has since withdrawn that opinion and issued a substituted opinion.[3] Therefore,

---

**2.** Other courts have held that a ruling on a condemnor's satisfaction of the jurisdictional requirement of good faith negotiations is most closely analogized to a ruling on personal jurisdiction. *See Cusack*, 71 S.W.3d at 398 & n. 3 (citing *Hipp*, 832 S.W.2d at 75–76). Therefore, while we are aware of some uncertainty regarding the applicable standard of review in similar cases, *compare Cusack*, 71 S.W.3d at 398 n. 3, *with Hubenak*, 65 S.W.3d at 797–98, and *MidTexas Pipeline Co. v. Dernehl*, 71 S.W.3d 852, 856 (Tex.App.-Texarkana 2002, pet. filed), we see no reason to distinguish this jurisdictional issue from that of personal jurisdiction. Accordingly, we review

the trial court's resolution of questions of law de novo and its determination of underlying factual disputes for sufficiency of the evidence. *See Cusack*, 71 S.W.3d at 398; *Hipp*, 832 S.W.2d at 76; *see also Old Kent Leasing Servs. Corp. v. McEwan*, 38 S.W.3d 220, 225 (Tex.App.-Houston [14th Dist.] 2001, no pet.) (setting out the appropriate standard of review of personal jurisdiction issue).

**3.** The parties have submitted additional briefing addressing this development and related cases that have been decided since the original briefing was submitted to this court.

we will briefly review the holding of the original *Hubenak* opinion, and then consider the application of the good faith negotiation requirement to this case under existing case law.

In the original *Hubenak* opinion, the First Court of Appeals held that San Jacinto Gas Transmission Company, a gas utility, did not negotiate in good faith to acquire easements in connection with a pipeline construction project because its offers to purchase the easements from the landowners included three additional property rights that were not included in its board of director's resolution approving the project. These rights were: (1) the right to transport substances in addition to natural gas; (2) the obligation to warrant and defend title to the easement; and (3) the right to assign the easement to any person or entity. The landowners had also argued, as does Harrison, that the additional rights sought could not be condemned, but the court did not reach that argument.

On motion for rehearing, the First Court of Appeals withdrew its original opinion and issued a substituted opinion, this time holding in favor of the condemnor. In the substituted opinion, the court did not require that the condemnor's board resolution specify the property rights being negotiated. Instead, the court held that in determining whether an offer was made in good faith, the focus must be on the amount of compensation offered. *Hubenak*, 65 S.W.3d at 800, 801. In reaching its conclusion, the court stressed that the sole purpose of Property Code section 21.012 and its predecessor statutes was to " 'forestall litigation and to prevent needless appeals to the courts when the matter may have been settled by negotiations between the parties.' " *Id.* at 797 (citing *County of Nueces v. Rankin*, 303 S.W.2d 455, 457 (Tex.Civ.App.-Eastland 1957, no writ)).

In reaching its conclusion, the *Hubenak* court emphasized that "it takes very little to satisfy the negotiate-in-good-faith requirement." *Id.* at 798. To show a bona fide offer was made, the *Hubenak* court explained, "the condemnor need only show its offer was based on a reasonably thorough investigation and honest assessment of the amount of just compensation due the landowner." *Id.* The court noted that even a single offer by a condemnor would satisfy the requirement, if it was a bona fide offer. *Id.* at 798. Because the undisputed evidence demonstrated that San Jacinto offered the landowners far more for the easements than their appraised values, and the landowners did not accept them, the *Hubenak* court found that San Jacinto satisfied the unable-to-agree requirement as a matter of law. *Id.* The court also found that San Jacinto demonstrated that further negotiations would be futile. *Id.* at 798–99.

As in the present case, the *Hubenak* landowners argued that San Jacinto's offers were not made in good faith because they included additional property rights that San Jacinto could not lawfully obtain in a condemnation proceeding. *Id.* at 800. The *Hubenak* court rejected this argument:

> In these cases, San Jacinto made good-faith efforts to determine the value of the land by hiring a state-certified general real estate appraiser. San Jacinto then offered the Landowners amounts far greater than the appraisals. Moreover, the Landowners presented no evidence that the three additional property rights were material to the value of the land. Nor did they present evidence that the three rights would have made a difference in the amounts which should have been offered.

*Id.* at 800–01. Additionally, the court noted that San Jacinto never sought to condemn the three additional property rights, but merely sought to purchase them along with the easements; therefore, the issue of whether San Jacinto could actually condemn the three additional property rights was "simply irrelevant." *Id.* at 801.

■ Focusing on the amount of compensation offered, the *Hubenak* court concluded that the trial court's jurisdiction was not precluded merely because San Jacinto sought to obtain in negotiations additional rights beyond those it may condemn. As the court explained:

> In conferring jurisdiction, Property Code section 21.012 requires no more than that the condemning entity's offer of what it feels is "just" or "adequate" compensation be based on a "reasonably thorough investigation and honest assessment of the property to be taken." *Hipp*, 832 S.W.2d at 78. This does not limit a condemning entity from negotiating for, offering to buy, and buying more than it may condemn. As long as "just" or "adequate" compensation is offered for the property to be taken, section 21.012 does not preclude jurisdiction when a condemning entity makes a combined offer for those property rights it may condemn along with any additional property rights it desires.

*Id.* at 801.

At least one other court of appeals has considered the argument Harrison raises in response to Exxon's appeal—that the condemnor did not negotiate in good faith when it sought more property rights than could be condemned—and reached the same conclusion as the *Hubenak* court. *See Cusack Ranch Corp. v. MidTexas Pipeline Co.*, 71 S.W.3d 395 (Tex.App.-

Corpus Christi 2001, pet. filed).[4] In *Cusack*, the landowners complained that Mid-Texas's proposed agreement would have conveyed to MidTexas the right to transport substances other than natural gas through the pipeline, the right to assign the right-of-way, and a warranty of title to the property interests conveyed. *Id.* at 397. The *Cusack* court held that the fact that MidTexas's final offer contained those terms was not, alone, enough to negate other evidence of MidTexas's attempt to engage in good faith negotiations with the landowners. *Id.* at 400. The court reasoned that an overly technical or rigid interpretation of the unable-to-agree requirement would thwart its purpose of forestalling litigation and preventing needless appeals to the courts when the matter might have been settled by negotiations between parties. *Id.* at 401.

The only authority we are aware of that has rejected the reasoning of *Hubenak* and *Cusack* is *MidTexas Pipeline Co. v. Dernehl*, 71 S.W.3d 852 (Tex.App.-Texarkana 2002, pet. filed). In *Dernehl*, a majority of the court held that an offer to purchase property that included rights or properties in addition to the property to be condemned was not enough to satisfy the good faith negotiation requirement. *Id.* at 858. On rehearing, the *Dernehl* court clarified its opinion, explaining that it did not state or imply that a condemnor could not make offers for and purchase property and rights which it could not acquire by condemnation proceedings; however, such an offer should be made separate and apart from the offer made as a prerequisite by law to condemnation. *Id.* at 861 (op. on reh'g). Further, the court stated that "a threat or pretense of condemnation made

---

4. Interestingly, the Cusack court's opinion, which was released prior to the substituted *Hubenak* opinion, rejected the reasoning of

the original *Hubenak* opinion. *See Cusack,* 71 S.W.3d at 400.

by the condemnor on land or for rights not subject to condemnation and made in order to obtain additional property or rights constitutes a wrongful act and an abuse of the right of eminent domain." *Id.* The court cited no authority for these conclusions. Justice Cornelius issued a dissenting opinion on rehearing, adding to his dissent to the original opinion, in which he argued that the majority's conclusion was directly contrary to the recently decided cases of *Hubenak* and *Cusack*.[5] He also noted that the only case supporting the majority was the original *Hubenak* opinion that had been withdrawn. *Id.* As Justice Cornelius argued, "if the majority view prevails here it will add confusion to the law of eminent domain and if followed generally, will thwart the legislative purposes to simplify eminent domain proceedings and to lessen the likelihood of necessary litigation and appeals." *Id.*

We agree with the reasoning expressed by Justice Cornelius and the *Hubenak* and *Cusack* courts. The inclusion of additional property rights that may or may not be condemnable in a final offer prior to condemnation does not evidence, as a matter of law, the condemnor's failure to negotiate in good faith. *See Hubenak*, 65 S.W.3d at 800; *Cusack*, 71 S.W.3d at 400. In determining whether a condemnor negotiated in good faith, the focus of the determination of the jurisdictional requirement must be on the amount of compensation offered. *Hubenak*, 65 S.W.3d at 800. To hold otherwise would unnecessarily complicate the negotiation process and frustrate the purpose behind the good faith negotiation requirement of promoting the resolution of property acquisitions through negotiations rather than litigation.

## Application of the Good Faith Negotiation Requirement to the Facts

Having reviewed the case law on the statutory requirement of good faith negotiations, we now consider whether Exxon demonstrated that it engaged in good faith negotiations prior to initiating its condemnation proceeding. We begin by reviewing the facts supporting the findings of good faith negotiations in *Hubenak* and *Cusack*. In *Hubenak*, the record showed that San Jacinto's representative contacted the landowners several times over a period of several weeks and was informed that the landowners did not want a pipeline on their property. *Hubenak*, 65 S.W.3d at 799. The *Hubenak* court held that being told by a property owner, in no uncertain terms, that one simply does not want to hear any proposal, or that one simply does not want a pipeline on one's property, demonstrated futility as a matter of law and satisfied the "unable-to-agree" requirement. *Id.* Further, the record showed that San Jacinto's offers were for much more than the amount determined by an independent appraiser, and the landowners presented no evidence that the additional property rights sought were material to the value of the land or that the rights would have made a difference in the amounts that should have been offered. *Id.* at 800–01. The court found that, on the basis of this evidence, San Jacinto had demonstrated both that negotiations with the landowners were futile, and that San

5. Justice Cornelius also referenced another case, *Hubenak v. San Jacinto Gas Transmission Co.*, 37 S.W.3d 133 (Tex.App.-Eastland 2001, *pet.* denied), in which the Eastland Court of Appeals, in another case involving the same rights and obligations sought in the *Hubenak* case before the First Court of Appeals, reversed a summary judgment for San Jacinto because it found that a fact question existed on whether San Jacinto negotiated in good faith. *Dernehl*, at 861 & n. 3 (Cornelius, J. dissenting on rehearing).

Jacinto had made bona fide offers to them. *Id.* at 801.

In *Cusack*, the court found that the condemnor, MidTexas, had satisfied the good faith negotiation requirement by showing that its representatives had engaged in negotiations for a pipeline easement for some time with the landowner, who objected to the route of the pipeline. *Cusack*, 71 S.W.3d at 399. During the negotiations, the landowner did not object to the terms it later contended were beyond MidTexas' power to condemn, even though those terms were included in the final offer. *Id.* at 399–400. Further, on several occasions, the landowner failed to respond to Mid-Texas's attempted communications. *Id.* at 400. The *Cusack* court found that the evidence, taken as a whole, showed that MidTexas engaged in good faith negotiations sufficient to satisfy the requirement that it was unable to agree with the landowner on the amount of damages prior to instituting the condemnation proceeding. *Id.*

■ Here, ExxonMobil submitted the affidavit of W.G. Bush in support of its motion for partial summary judgment on its right to condemn and in response to Harrison's plea to the jurisdiction. Bush was responsible for negotiating and attempting to acquire easements from the landowners in connection with the pipeline project, and he negotiated for the easement in question from Harrison. In his affidavit, Bush stated that prior negotiations with Harrison had been unsuccessful, and in a final attempt to negotiate, he mailed Harrison the June 20, 1995 letter containing the final offer of $45,950.00 for the permanent easement and the temporary construction easement. Included with the letter was the proposed easement and right-of-way agreement setting out the rights and interests ExxonMobil sought to acquire and those to be reserved to Harrison. Bush also stated that, prior to making the offer, he had received an appraisal indicating that the value of the easements, any and all improvements located on the easements, and all damages, if any, to the landowner's remainder property, was $7,858.00. He stated that the offer of $45,950.00 was the highest amount that ExxonMobil was willing to pay.

Additionally, Bush stated that the final offer was mailed by certified mail, return receipt requested, and he received the return receipt a number of days after it was mailed, indicating that Harrison had received it on July 13, 1995. According to Bush, Harrison did not respond to the letter within ten days, and in fact had never responded to the letter. Bush also stated that Harrison's failure to respond in accordance with the terms of the final offer letter constituted a rejection of the final offer, and led him to the conclusion that further negotiations would be futile.

Harrison does not dispute any aspect of this evidence. Instead, its complaint is solely that Exxon did not negotiate in good faith because it included in its proposal the right to assign the easement and the obligation on Harrison to warrant title to the easement, which Harrison contends are property rights that cannot be condemned.[6] However, as we have deter-

---

**6.** In the fact section of its appellate brief, Harrison disputes Exxon's valuation of the easement and its characterization of the negotiations. However, the only evidence Harrison points to in support of its valuation argument is the jury's award at the trial on damages of $151,922.64 as reasonable rental value for the easement for five years, which Harrison contends works out to a "per rod" market value of $626.50 compared to Exxon-Mobil's final offer of roughly $95 per rod (a "rod" is a linear measurement of 16.5 feet). To refute ExxonMobil's characterization of the negotiations, Harrison points to certain

mined, the inclusion of those property rights alone does not require a finding that ExxonMobil failed, as a matter of law, to engage in good faith negotiations.

 Unlike the situations in *Hubenak* and *Cusack*, we have no evidence of the substance of whatever negotiations took place between Bush and Harrison prior to ExxonMobil's issuance of the final offer letter, and we have no evidence of the length of time over which any negotiations took place. However, the *Hubenak* court emphasized that it takes very little to satisfy the requirement that a condemnor negotiate in good faith. *Hubenak*, 65 S.W.3d at 798–99. Indeed, as the court stated, a single offer by a condemnor may satisfy the requirement, if it is a bona fide offer. *Id.* at 798; *Hipp*, 832 S.W.2d at 78. And, when a landowner makes no response to such an offer, his silence will be construed as a rejection of the offer, which is sufficient to demonstrate that the parties are unable to agree. *Hubenak*, 65 S.W.3d at 798; *Schlottman*, 259 S.W.2d at 330–31.

In the present case, it is undisputed that ExxonMobil made Harrison a final offer of $45,950.00, an amount far in excess of an appraiser's valuation at $7,858.00, but Harrison did not respond within the time limit set out in the final offer or thereafter. It is also undisputed that Harrison never complained about the inclusion of the additional property rights or interests in the final offer or indicated that ExxonMobil's offering price should be adjusted to compensate for them. We hold that, on these facts, ExxonMobil demonstrated that it satisfied the good faith negotiation re-

quirement of section 21.012 of the Property Code.

Accordingly, we sustain ExxonMobil's issue on appeal in Cause No. 14–00–01392–CV. The trial court's order of August 4, 2000 dismissing Exxon's condemnation proceeding for want of jurisdiction is reversed, and we remand this case to the trial court for further proceedings in accordance with this opinion. Additionally, because we find that ExxonMobil had the right and power to condemn the property at issue, we also reverse the final judgment in Cause No. 14–01–01209–CV and render a take-nothing judgment against Harrison.

---

responses to one of ExxonMobil's requests for admissions, filed October 17, 2000. However, we note that this evidence was not before the trial court at the time it ruled on Harrison's plea to the jurisdiction and motion to dismiss. And, in any event, it does not contradict ExxonMobil's evidence that it made

Harrison a final offer for the easement in excess of its appraised value, and that Harrison failed to respond to the offer or otherwise indicate that it objected to the inclusion of the additional property rights made the basis of its argument on appeal.